Barnum *against* Barnum.

Barnum
*v.*
Barnum.

When a witness attempts to relate a conversation, he ought to relate the whole;—not only what the party may have said in chief, but also what he may have said in answer to questions put to him;—for such answers may explain or destroy the substance of the conversation.

Therefore, where the defence to an action on a promissory note given for a quarter of a lottery ticket, was, fraud in the sale of the ticket, or a failure of consideration; and a witness for the defendant testified, that the plaintiff, at the time of the negotiation, during the temporary absence of the defendant, told the witness, that "he had offered the quarter ticket to the defendant for 200 dollars;" that "he was sure the ticket had been drawn, and if in the *Groton Monument* lottery, it had drawn a prize of 2000 dollars;" the witness remarked, that "he should not think the plaintiff would sell to the defendant for 200 dollars;" to which the plaintiff replied, that "he had offered his quarter ticket to the defendant for that sum, and if he concluded to accept the offer, he should not take it back;" it was held, that the whole of such testimony was admissible.

The testimony of a witness, which, by itself, does not conduce to establish any material fact in the case, may be received, if in connexion with subsequent testimony, it become material.

Therefore, where a witness, called to identify a lottery ticket shewn in evidence as the one sold by the plaintiff to the defendant, testified, that he could not say that this was the same ticket, but he testified on a former trial between the same parties respecting that ticket, and then had with him a piece of paper, not now in his possession, on which he had minuted, with a lead pencil, the combination numbers, and by them he knew that *that* was the ticket sold by the plaintiff to the defendant; another witness then testified, that the ticket produced on the former trial was the same as that now offered; and the first witness having gone to his house and examined his minute, came again on the stand and testified, that he had compared the ticket now shewn with such minute and had no doubt of its identity; it was held, that the whole of such testimony, taken in connexion, was admissible.

Where parol testimony was offered to prove, that a certain ticket had drawn a blank; and the witness testified, that he was a manager of the lottery, that he attended the drawing of it, and that a ticket with the combination numbers in question, drew a blank; this testimony being objected to, 1. because the appointment of the witness as a manager could be proved only by the record, 2. because the drawing of the lottery could be proved only by the managers' books, and 3. because the result could not be ascertained, without producing the scheme; it was held, that neither of these objections was sustainable, and the testimony was admissible.

A promissory note not negotiable, is not a specialty, but stands on the footing of a parol contract.

A want of consideration may, therefore, be shewn, to avoid such note.

This was an action on a promissory note, made by the defendant, for 200 dollars, dated *September* 29th, 1828.

The cause was first tried, in *September*, 1830; and a new

trial having been granted, (8 *Conn. Rep.* 469—472.) it was tried again, at *Danbury, September* term, 1831, before *Peters,* J.

The first ground of defence was, that the note was obtained by fraud. The defendant claimed, that the plaintiff, on the 29th of *September,* 1828, came to his, the defendant's shop, and stated, that a ticket having thereon the combination numbers 12. 35. 43. had drawn a prize of 2000 dollars, in a lottery at *Hartford;* that he owned a quarter of a ticket with those numbers on it, in the *Groton Monument* lottery, which was drawn at *Hartford,* at the time when such prize ticket was drawn ; that there were then but two lotteries existing in the state, and said prize must be in one or the other of those lotteries, and if in the *Groton Monument* lottery, then the ticket of which he owned a quarter, had certainly drawn it ; the only doubt being in which lottery the prize was drawn ; that he thereupon offered to sell such quarter ticket to the defendant, for 200 dollars ; that confiding in this representation, the defendant bought said quarter ticket, and gave the plaintiff said note ; but that said ticket had then drawn a blank in the *Groton Monument* lottery ; and that the plaintiff knew, that his representation was false, at the time he made it. The plaintiff admitted, that the note was given for a quarter of a ticket in the *Groton Monument* lottery, sold by him to the defendant. To establish the defence, the defendant introduced sundry witnesses, and, among others, *Samuel Barnum,* who testified, that on the day of the date of the note, he saw the parties in the defendant's shop, and heard them converse on this subject, but did not hear the terms stated ; that the defendant went out, for a few minutes, and while he was absent, the plaintiff told the witness, that he had offered the quarter ticket to the defendant for 200 dollars ; that he was sure the numbers had been drawn, and if in the *Groton Monument* lottery, they had drawn a prize of 2000 dollars : That the witness told the plaintiff, he should not think he would sell to the defendant for 200 dollars : That the plaintiff replied, that he had offered his quarter ticket to the defendant for that sum, and if he concluded to accept the offer, he should not take it back. The plaintiff objected to so much of the testimony of the witness as related to the conversation between him and the plaintiff ; but it was admitted by the court.

To identify the ticket, the defendant introduced one *Zacha-*

*Fairfield,*
*June, 1832.*

Barnum
*v.*
Barnum.

*riah Porter,* who said, that he was present when one *Crosby* sold to the plaintiff the quarter ticket in question ; that an entry was, at that time, made, with a lead pencil, on the back of the ticket, that it was the property of *Crosby* and *Barnum :* that he then took down on a piece of paper the combination numbers of the ticket, which were not now in his possession ; that he could not say this was the same ticket, but he was a witness on the former trial, and then had with him the combination numbers which he took down, and by them he knew the ticket offered on that trial to be the same which *Crosby* sold to the plaintiff ; and *that* was the same which the plaintiff sold to the defendant ; as he was present on the morning of the sale, saw the ticket and heard the conversation of the parties when making the bargain. The defendant then proved, by *R. Booth,* Esq. that the ticket now offered was the same which was offered on the former trial. This testimony, so far as it tended to prove that the ticket now offered was the same as that for which the note was given, was objected to, by the plaintiff, but was admitted by the court.

*Porter* then went to his house and obtained the numbers, so by him taken down, and referred to in his testimony, and, on comparing them with those on this ticket, testified, that he had no doubt that it was the same which the plaintiff sold to the defendant. To this testimony the defendant objected ; but the court admitted it.

To prove that the ticket drew a blank, the defendant offered the deposition of *Daniel Burgess,* (to which the ticket was attached) who testified, that he was one of the managers of the *Groton Monument* lottery, for the year 1828 ; that the class in that lottery, to which this ticket belonged, was drawn at *Hartford,* on the 26th of *September,* 1828 ; that he attended the drawing ; and that the ticket with the combination numbers 12. 35. 43. drew a blank. To this deposition the plaintiff objected, on the ground that it was not legal testimony to prove the appointment of the deponent as one of the managers of the lottery, nor to prove the drawing of the numbers, nor to prove that this ticket drew a blank ; especially, as no evidence of the terms or conditions of the scheme of that class had been given. These objections were overruled, by the court ; and the deposition was admitted.

The plaintiff claimed, that if the parties, at the time of the contract, were ignorant of the result of the drawing, there

was not a total failure of the consideration of the note, and the plaintiff was entitled to a verdict. The court charged the jury, that if they should find, that the plaintiff told the defendant, that the ticket in question had drawn a prize, believing it to be true, and that the defendant, relying thereon, gave the note in question therefor, when it was in fact a blank ; or if they should find, that the plaintiff told the defendant, that the ticket had drawn a prize, knowing it to be false, and thereby induced the defendant to give the note in question, their verdict ought to be for the defendant; otherwise, for the plaintiff to recover the amount of the note and interest.

*Fairfield,*
June, 1832.

Barnum
*v.*
Barnum.

The jury returned a verdict for the defendant ; and the plaintiff moved for a new trial, for the admission of improper testimony and for a misdirection.

*N. Smith* and *Betts*, in support of the motion, contended, 1. That the testimony of *Samuel Barnum*, so far as it was objected to, was inadmissible. It consisted of a conversation between the plaintiff and a third person, not bearing upon the question of fraud in the sale, or upon any point in controversy ; and if it could have any influence, it must be an improper one. The sale of the quarter ticket, and that this was the consideration of the note, were facts admitted.

2. That the testimony of *Z. Porter* was inadmissible. He was permitted to make evidence of a fact, of which he had no recollection, by means of minutes on a paper which he did not produce.

3. That the deposition of *D. Burgess* was inadmissible. In the first place, he could not prove that he was a manager of the lottery ; his appointment being a matter of record. Secondly, he could not prove the drawing ; the books of the managers being the best evidence of *that.* Thirdly, the result of the drawing depended on the scheme of the lottery, which was not shewn ; and consequently, the witness was permitted to give his own conclusions upon a point, which it was the rightful province of the court and jury to determine.

4. That the charge was incorrect. In the first place, it was the same in effect as that given on the former trial, which was determined to be erroneous. 8 *Conn. Rep.* 469. 472. The judge instructed the jury, substantially, that if the ticket had in fact drawn a blank, at the time of the sale to the defendant, though the parties were ignorant of that fact, and of course,

there was no fraud, their verdict must be for the defendant, for want of consideration. It was decided by this Court, in the former case, that under such circumstances, the ticket, at the time of the sale, was a thing of value, and consequently, there was a sufficient consideration for the note. Secondly, the note being " for value received," is a *specialty ;* and therefore, imports a consideration. *Swift's Ev.* 339. 1 *Swift's Syst.* 393. 1 *Swift's Dig.* 429. *Slocum* v. *Sanford,* 2 *Conn. Rep.* 534. *Edgerton* v. *Edgerton,* 8 *Conn. Rep.* 9. *Harvey* v. *Seymour,* 8 *Conn. Rep.* 68.

*Sherman* and *Booth,* contra, insisted, 1. That the testimony of *S. Barnum* was properly received. It was necessary for the defendant to prove his whole defence ; a material part of which was, that the plaintiff had offered to sell him the quarter ticket for 200 dollars. The testimony in question went to establish that fact, by the admission of the plaintiff. It was not offered to prove a fraud.

2. That the testimony of *Z. Porter* was admissible to *identify* the ticket for which the note was given. And it is not necessary that that part of his testimony which was objected to, should, *of itself,* be sufficient to establish that point ; but if, in connexion with other testimony, either from the same witness or from others, it tended to prove a material fact, it could not be rejected. The latter part of *Porter's* testimony, taken in connexion with the former part, made the whole relevant and admissible.

3. That the deposition of *D. Burgess* was admissible. First, it was not necessary to prove his appointment as a lottery manager, at all : it was an immaterial fact in the case. But if it were otherwise, his official character might be shewn, by proving that he acted in that capacity. Secondly, the drawing of a lottery is not a matter of record. No record is required by law ; and it does not appear, that any was in fact made. Thirdly, no scheme was necessary. The only question was, whether the ticket drew a prize or blank. That fact might be proved, by any witness who knew it. The result of the drawing was the point of enquiry ; and it is immaterial how that result was produced.

4. That the charge was unexceptionable. In the first place, the case presented a very different aspect, on the last trial, from what it had on the first. There it appeared as a bargain

of hazard. Here it was asserted by the plaintiff, and assumed as the basis of the contract, that the ticket had drawn a prize in one of the lotteries mentioned ; and the only doubt was, in which lottery it was drawn. There, the rumour of a prize had been heard ; here the fact was positively affirmed. Secondly, if the consideration contemplated by the parties, did not exist, no recovery can be had on the note. This is not questioned, provided the consideration can be enquired into ; and this turns on the question, whether a promissory note, in *Connecticut*, is a specialty. Confessedly, it is not, by the common law of *England.* And it has never been determined to be such, in this state, for any other purpose than that it may be so declared on. It has been decided, that an instrument in form of a bond, not under seal, is not a specialty. *Montville* v. *Haughton* & al. 7 *Conn. Rep.* 543. *Seymour* v. *Harvey* & al. 8 *Conn. Rep.* 63. When it is said, that a note is *quasi* a specialty, this implies that it is not truly a specialty : it wants something necessary to constitute it a perfect specialty : but nothing short of a perfect specialty will preclude enquiry into the consideration as between the original parties. Formerly, receipts, in this state, were pleaded as discharges ; but now, they are treated here as they are elsewhere. Notes of hand, for similar reasons, ought to be placed on the same footing as they stand on elsewhere.

DAGGETT, J. The plaintiff asks a new trial, on the ground of several interlocutory opinions given by the judge, at the circuit, and on the ground of error in his charge.

The defence consisted of two parts ; first, false asseverations made by the plaintiff to induce the defendant to buy the ticket in question ; and if the defendant had failed to establish the fraud, then that the testimony proved that there was no consideration for the promise.

1. The testimony of *Samuel Barnum* of a conversation between him and the plaintiff, was objected to. This was offered by the defendant, for the double purpose of proving the contract of sale and also the fraud of the plaintiff. That part of it, which related to his confession that he had offered it for 200 dollars, does not seem, in the view of the plaintiff, to be objectionable ; but he insists, that the part which consists of the reply of the plaintiff to the remark of the witness "that he should not think he would sell to the

defendant for 200 dollars;" that " he had offered it and should not take it back,"—was not admissible. This objection is extremely refined, and if it were to prevail, it would tend much to embarrass the trial. The settled rule of law is, that when a witness attempts to relate a conversation, he ought to relate the whole ; nor is it confined to what the party may have said in chief, but it extends equally to answers which he may have made to questions ; for such answers may explain or destroy the substance of the conversation. Moreover, the question was, whether any fraud was practised, by the plaintiff. It would be unsafe to say, that the jury might not consider this reply of the plaintiff as containing some evidence of a fraudulent design.

2. *Zachariah Porter* was called, by the plaintiff, to identify the ticket, and to show, that it was the ticket sold by the plaintiff. He said, that he put down the combination numbers, with a pencil, on a piece of paper, not now in his possession ; and he could not say, that this was the same ticket ; but he testified on a former trial between the same parties respecting that ticket, and then had the minute with him, and knew that the ticket shown and in controversy on that trial, was the same sold by the plaintiff to the defendant. The defendant then offered *R. Booth*, Esquire, to testify, and he did testify, that this ticket was the same offered in evidence on the former trial. This testimony of *Z. Porter* was objected to, and admitted. The witness then went to his house, examined the minute made by a pencil, and came again on the stand, and testified, that he had compared it with the ticket, and had no doubt that it was the same. This proof was rendered admissible, by the testimony of Mr. *Booth* ; and it was confirmed, by his subsequent affirmations. It would be a strange position, that a declaration of a witness shall not be received, because he cannot be positive as to the identity, when that doubt can be removed by a competent witness. *Id certum est quod certum reddi potest,* applies with full force.

3. *Daniel Burgess's* deposition was offered to prove, that the ticket in question had drawn a blank. The deponent swore, that he was a manager in the *Groton Monument* lottery ; that he attended the drawing of the lottery ; and that the ticket with these combination numbers drew a blank. This deposition was objected to, on the ground that the deponent ought not to be admitted to swear that he was appointed a manager,

*Fairfield,*
June, 1832.

Barnum
*v.*
Barnum.

or to prove the drawing of the numbers, or that this ticket drew a blank; especially, as the conditions and terms of this scheme had not been proved. This deposition was admitted and was read to the jury, notwithstanding it was objected to, by the plaintiff. I see nothing erroneous in this opinion of the judge. The deponent was not called upon to swear respecting a record, or to the contents of any writing; nor was it at all material whether he was a manager duly appointed. All the material facts about which he testified, were as to the drawing of this lottery; and that the ticket with this combination drew a blank. His deposition is full to the purpose that he attended the drawing; and whether it drew a blank he certainly knew, as he gives all the numbers drawn; and it appears, that no one of the numbers thus drawn, was on this ticket. Our courts have gone much further than this in the trial of indictments for counterfeiting the bank notes of the banks in this and the other states. The testimony of persons conversant with such paper has been received, and that too against the objection, that such testimony was not the best which the nature of the case would admit of; for that by the books of the banks it could be made *certain* whether those notes had ever been issued by them. No rule of law requires *all* the evidence, or the *strongest* evidence of the matter in dispute; but it forbids that evidence, which, from the nature of the case, supposes better evidence which the party might obtain. A record or bond is better evidence of their contents than the testimony of any witness. Such testimony, therefore, shall not be admitted while the record or bond is kept back. It would awaken just suspicion of fraud. I perceive nothing in this deposition to create such a suspicion. Thus much in relation to the objections to the testimony.

4. There is a question, however, in this case, which deserves much consideration. The court was requested to instruct the jury, that as this note was made payable to the plaintiff only, and was not therefore negotiable, unless they found the note was obtained by fraud, their verdict ought to be for the plaintiff; for that the want of consideration was not at law a defence. The court refused so to instruct the jury.

This position is founded on the idea, that this note is a *specialty;* and this being assumed, the plaintiff might have insisted, that even fraud would be no defence; for the common law doctrine is, that neither fraud nor want of consideration

*Fairfield,*
*June, 1832.*

Barnum.
*v.*
Barnum.

is a defence at law to a specialty : The consideration is locked up and cannot be enquired into.   Fraud in the *execution* may be shown ;   because, if proved, it is not the act and deed of the party.   In support of the doctrine that a promissory note, not negotiable, is a specialty, and is in all cases to be treated as such, the plaintiff relies on the uniform practice of our courts, and on the authority of our elementary treatises.   Thus *Swift*, in his *System, vol.* I. *page* 392. says : " In this state, the courts have adjudged, that promissory notes, though unsealed, are specialties."   The same doctrine is repeated and enforced in his *Digest, vol.* 1. *pp.* 189. 429.   There is additional authority given to this opinion, by the practice which formerly prevailed in declaring on promissory notes as specialties, laying a profert, and pleading the general issue of *Non est factum.*   Our statute of limitations also bars a recovery on all simple contracts, after the lapse of six years ; but the limitation is seventeen years respecting notes, the same as bonds.

In like manner, our courts have decided, that a receipt, without a seal, might be pleaded as a release, giving to it the force of a sealed instrument.   *Carter* v. *Bellamy, Kirb.* 291. *Herd* v. *Bissel,* 1 *Root* 260.   *Palmer* v. *Corbin,* 1 *Root* 271. *Anderson* v. *Henshaw,* 2 *Day* 272.   This doctrine was somewhat shaken, by the decision of this Court, in the case of *Bartsch* v. *Atwater* & al. 1 *Conn. Rep.* 409. ; but the *lex loci* rather governed in that case, the receipt having been made in *New-York.*

The principle involved in this cause, has been, several times, brought into view, in this Court ; but I am not aware, that it has been directly settled.   A case was decided, by the late Judge *Chapman,* on the circuit, that an instrument purporting to convey land, was not a valid deed without a seal.   This decision probably produced the act of our legislature of *May,* 1824, which declared, that all conveyances of land, and all bonds *theretofore* made, should be good, though not sealed. But by the terms of this act, it was not to extend to any suit then pending ; and it left the point still unsettled as to the necessity of a seal, in future.

In *Montville* v. *Haughton* & al. 7 *Conn. Rep* 543. and in *Seymour* v. *Harvey,* 8 *Conn. Rep.* 63. this Court recognized the doctrine, that a seal was essential to the validity of a bond. In the cases of *Edgerton* & al. v. *Edgerton,* 8 *Conn. Rep.* 6. and *Chaplin* v. *Canada,* 8 *Conn. Rep.* 286. this question was

made, by counsel; but the court did not deem it necessary to dispose of it definitively.

The principle established by this Court, in *Cook* v. *Bradley,* 7 *Conn. Rep.* 57. bears strongly on the point now in judgment. The first ground then taken by the Court, was, that the case of *Rann* v. *Hughes,* 7 *Term Rep.* 350. n. furnished the true rule on the subject of contracts, *viz.* " that all contracts are distinguished into agreements by specialty and agreements by parol."

It being a principle of the common law, that to constitute a specialty, there must be a seal, it follows, that this note is not a specialty, but stands on the footing of a parol contract; and therefore, a want of consideration, or fraud in the consideration, may be shown to avoid it. Indeed, it would be strange if it were otherwise, when the mode of pleading adopted for the last twenty years, has been *non assumpsit.*

I am aware, that in coming to this result, the opinion and practice of the profession, may be counteracted; but it is so far from being a departure from the plain and established principle of the common law, that it is in entire accordance with it.

It is now only twenty years since promissory notes were first made negotiable. Formerly, when a fraud had been practised, or a mistake had intervened, in making a note or receipt, the party was compelled to seek redress in a court of chancery. I can see no good reason why such a defence may not be safely made in a court of law.

Till the case of *Read* v. *Brookman,* 1 *Term Rep.* 151. it was the practice to seek redress upon a lost deed in a court of chancery. It was then decided, that by alleging the loss, in a declaration at law, and by proving it, evidence of the contents might be received, and a recovery had. Other instances might be cited of a departure from precedents, to facilitate the administration of justice; but I forbear.

The motion for a new trial must be denied, and the rule discharged.

The other Judges were of the same opinion, except Bis-sell, J., who gave no opinion.

New trial not to be granted.