ALLEN BROWN, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. A charge that if the deceased was lawfully in possession of the house and premises when he was killed, and on which he was living at the time of the killing, he was as exempt from hostile intrusion, or from forcible or unlawful ejectment as if the place was his by fee simple title, and he has as good right to defend it from such intruder, even if that intruder claimed ownership of the property, as if the title was in him without dispute; does not assume that if the deceased was lawfully in possession of the house and premises the defendant was a hostile intruder with intent to forcibly and unlawfully eject the deceased. On the contrary, its propositions as to lawful possession and hostile and forcible intrusion and unlawful ejectment, are hypothetical.

2. A charge is not irrelevant when there is testimony to which it is applicable.

3. Charging as to manslaughter in the second degree is immaterial to the defendant where there is a verdict of such manslaughter, and the testimony of the State clearly proves a higher degree of guilt, murder in the first degree, and it is apparent that the jury did not believe the testimony for the defense, which testimony, had the jury believed it, would have influenced a verdict of acquittal on the ground of self defense. Any error in the inapplicability of the charge to the case made by the testimony is harmless error.

4. On an indictment for murder there may be a conviction of manslaughter in the second degree.

5. The fact that the evidence would have sustained a verdict of murder in the first degree, does not render it insufficient to support a verdict of manslaughter in the second degree.

6. Offenses committed prior to the Revised Statutes becoming operative, are still offenses under the statutes which punished them at the time of their commission. Such is the express purpose of Section 2353 of the Revision. Whether Section 32 of Article III of the Constitution inhibits a mitigation of punishment of any such prior offenses in the cases contemplated by the stated section of the Revision, is not involved in this case, as the punishment inflicted is within both the old and the new law punishing manslaughter.

Writ of error to the Circuit Court for Walton county.

The facts in the case are stated in the opinion of the court.

*C. J. Perrinot and Daniel Campbell* for Plaintiff in Error.

*The Attorney-General*, for Defendant in Error.

RANEY, C. J.:

The indictment charges the plaintiff in error with murder in the first degree in killing Marvin Knowles on July 12th, 1891, in Walton county. The trial was in July 1892, and resulted in a verdict of manslaughter in the second degree, and sentence to imprisonment in the State prison for seven years.

I. The first error alleged is as to the following instructions given to the jury: "If the deceased was lawfully in possession of the house and premises when he was killed, and on which he was living at the time of the killing, he was as exempt from hostile intrusion or from forcible and unlawful ejectment as if the place was his by fee simple title, and he has as good right to defend it from such intruder, even if that intruder claimed ownership of the property, as if the title was in him without dispute." An objection urged against this charge, is that it virtually assumes that if the deceased was lawfully in possession of the house and premises where he was living when he was killed, the defendant was a hostile intruder with intent to forcibly and unlawfully eject the deceased from such house and possession. In our judgment no such assumption is to be found in the charge; on the contrary, its propositions as to lawful possession and hostile and forcible intrusion and unlawful ejectment are hypothetical. Another objection to this instruction is that it is en-

tirely unsupported by the evidence, and is upon facts which the testimony does not tend to prove, or, as the proposition is ordinarily stated, the charge is entirely irrelevant. Looking to the testimony of the wife of the deceased, who alone was present when the altercation took place, the grievance under which the defendant, according to his own expression at the time of his going to the house, was smarting, was that the deceased had cursed the females of defendant's family, still it can not be denied that there is testimony to the effect that the retention of the house, which it seems the defendant had sold to the deceased, but had not been paid for, was a subject of very hostile feelings in the defendant towards the deceased, and of bad blood between them. George Jordan testified that defendant had said to him several weeks before the shooting that he was going to kill Knowles and tear his house down. Allen Hodge says that about a month previous to the homicide the defendant was talking about a house the deceased had got from him, and said if deceased did not get out of it, he would kill him. In view of the presence of such testimony, and of the reply of the deceased that he had not done the alleged cursing, and the further statement of his wife to the same effect, the jury were entitled to sit in judgment upon the sincerity of the ostensible reason or excuse given by the defendant for his visit to the deceased's premises, which visit was, according to the State's testimony, clearly hostile. It was for them to decide whether he, notwithstanding his complaint as to the alleged cursing, did not go there to

Allen Brown v. The State of Florida.—Opinion of Court.

kill him and thus further his purpose of regaining possession. The charge was neither irrelevant, nor misleading.

II. The judge also charged the jury as follows: If the prisoner entered upon the premises of the deceased in a hostile and threatening manner, being armed with a deadly weapon, and called the deceased out of his house and began an altercation of words for the purpose of provoking an encounter, and the deceased assaulted him for the purpose of defending himself or his premises, he can not justify himself in killing the deceased on the ground that he was acting in self-defense. *If, however, he did not provoke the difficulty, but was unneceesarily on the premises where he had reason to believe, and did believe, that his presence would bring on a difficulty and would result in an encounter between himself and the deceased, and being so unnecessarily on the premises of the deceased under such belief, and continuing to remain there until a demonstration or an attempt was made by the deceased to take his life, he killed the deceased to prevent such attempt, he is guilty of manslaughter in the second degree;* but if you believe from the evidence that the prisoner was about or on the premises of the deceased without any hostile purpose, and that he did not intend by his presence there at that time to provoke an encounter, and that he did not by any conduct on his part bring on the difficulty, and that the deceased approached him with a deadly weapon, and in a threatening attitude, and the prisoner, under a reasonable belief that it was necessary,

shot and killed the deceased to save his own life, or his person from great bodily harm, you will find him not guilty."

The exception is confined to those words of the second sentence which are italicised, and the grounds of the objection are, first, that they are inapplicable to the evidence; and, second, it is contradictory and ambiguous, and therefore calculated to mislead and confuse the jury, and prejudice the accused; and, third, they are contrary to the then existing statute of manslaughter in the second degree.

There is certainly testimony tending to show that the defendant was unnecessarily on deceased's premises; he did not even have to go on them in passing to and fro between his own house and that of his wife's mother by the ordinary route, and it is testified that he left the ordinary path to go up to the house of deceased. The knowledge he is shown to have had of the hostile feelings and alleged fatal purposes of the deceased towards him, gave him reason to believe that his presence would bring on a difficulty, and especially so when the testimony of his own deadly purposes towards the deceased is considered.

Counsel have not pointed out wherein the words excepted to are extraordinary and ambiguous, or either, and we fail to perceive it, and this being so, we are brought to the last of the three objections to the charge; and in this connection counsel refer to two sections of the crimes statute, as it stood at the time of the homi-

cide.   They are sections 9 and 10, p. 351, McClellan's Digest, and are as follows:

"9. The killing of a human being without design to effect death, in a heat of passion, but in a cruel and unusual manner, unless it be committed under such circumstances as to constitute excusable or justifiable homicide, shall be deemed manslaughter in the second degree."

"10. Every person who shall unnecessarily kill another, either while resisting an attempt by such other to commit any felony, or to do any other unlawful act, or after such attempt shall have failed, shall be deemed guilty of manslaughter in the second degree."

It is urged that under such a state of facts the slayer would not be guilty under section nine, since that section contemplates the killing to be free from malice aforethought, without intent to kill, done in heat of passion, and in a cruel and unusual manner.   If there was any killing here that was not in self-defense, it was done not only in a cruel and unusual manner but also with a premeditated design to effect death, and hence the practical application in this case, of the term "killed," as used in the language excepted to, is, to say the least, of a more criminal character than the killing contemplated by the ninth section.   That the other characteristics of manslaughter under the ninth section do not appear in the assailed words, must be regarded as a matter of which the accused can not complain, when it is considered that those characteristics are the essence of certain elements of crime whose pre_

sence always increase the degree of criminalty, or aggravate the offending. An accused can not be heard to complain of error of this character that is in his favor. Smith v. State, 25 Florida, 517; Sullivan v. McMillan, 26 Florida, 543. As to the tenth section, it is only necessary to observe that it may not be that the judge intended to predicate the instruction under consideration upon it, since we find he has subsequently given that section in special charge; still it is entirely immaterial to the defendant that the judge may have so intended, as will more fully appear from the fourth subdivision of this opinion.

III. The third assignment of error is as to the judge's having charged in substantially the language of the tenth section, just referred to, as defining manslaughter in the second degree, and the proposition urged in support of the exception taken to the charge is that the evidence does not justify or warrant the giving of the charge unqualifiedly.

In view of the observation made in the succeeding paragraph of this opinion as to the nature and effect of the evidence, no other conclusion can be reached as to the charge than that any error that there may have been in the direction of the objection advanced to it, or otherwise, could not have been and was not disadvantageous to the accused.

IV. The other assignments of error relate to the denial of the motion for a new trial, and the argument in support thereof is that the evidence given by the witnesses on behalf of the State, when considered alone,

sustains the charge of murder, while on the other hand that from the defendant's witnesses is equally potent in sustaining the plea of the accused. It can not be denied that this is true. The State's testimony if credible, warranted beyond any reasonable doubt a verdict of murder in the first degree, and on the other hand if it was not worthy of belief the evidence for the defense made out a case of killing in self-defense. The fact however that the jury have returned a verdict of guilty of manslaughter is conclusive evidence that they did not believe the statement of the defendant or the testimony of John and Mary Allen as to the circumstances of the homicide, in so far as the accounts of either of these three persons is inconsistent with the testimony of Mrs. Knowles, who alone, with the deceased and defendant, was at the house when the killing was done. John and Mary Allen were at some distance and do not pretend to have seen all that must have occurred. The verdict can not be reconciled with the existence of a belief by the jury of the defendant's account of the homicide. They could not have believed it and done otherwise than acquit him of the entire charge; still the fact that they have not found him guilty of as high a degree of the offense as the evidence for the prosecution justified, does not even tend to show that they did not believe that evidence, but rather that they have given to some feature or features of it a mitigating effect which to the judicial mind it does not seem to merit. It may be that the use of the "dam lie" in the way it is said to have been used by the deceased may have had this influ-

ence. The offense of which there has been a conviction is included within or may be carved out of that major offense charged in the indictment, and the indictment is sufficient to sustain the conviction. Section 15, page 447, McClellan's Digest; Potsdamer vs. State, 17 Fla., 895; Pitman vs. State, 25 Fla., 648; 1 Bishop's Criminal Law, sections 780, 788, 791, 792, 804–808; Reynolds vs. State, 1 Kelly, 222; Ware vs. State, 20 Ohio St., 460; State vs. Huber, 8 Kas., 447; Gordon vs. State, 3 Clarke, 410; Commonwealth vs. Gable, 7 S. & R., 423; Wilson vs. State, 5 Mo., 497; Plumer vs. State, 6 Mo., 231; State vs. Fleming, 2 Strob. (Law), 463; State vs. Goffney, Rice, 431; King vs. State, 6 Miss. (5 How.), 730; and the fact that the evidence is more than sufficient to support the conviction does not render it insufficient to do so, and the prisoner is in nowise hurt by that excess of its probative force which the jury has ignored. 1 Bishop's Criminal Law, sections 794, 795, 804–808; Commonwealth vs. McPike, 3 Cush., 181; Commonwealth vs. Burke, 14 Gray, 100; Hardy and Curry vs. Commonwealth, 17 Gratt., 592; State vs. Archer, 54 N. H., 465; State vs. Parmelee, 9 Conn., 259; Solomon vs. People, 1 N. Y. (1 Coms.), 379; Regina vs. Neale, 1 Car. & Riv., 591. The correctness of these conclusions is not dependent upon the provisions of Section 15, p. 447, McClellan's Digest, *supra:* that whenever any person indicted for a felony shall on trial be acquitted by a verdict of part of the offense charged and convicted of the residue

thereof, such verdict may be received and recorded by the court, and thereupon the person charged shall be adjudged guilty of the offense, if any, which shall appear to the court to be substantially charged by the residue of such indictment and shall be sentenced and punished accordingly. At the common law, the rule asserted by our conclusions always obtains where the offenses were of the same grade; and it is recognized in some jurisdictions independent of any statute, even where the indictment is for a felony and the conviction for misdemeanor, on the ground of there being in such jurisdictions no superior privileges accorded to an accused on trial for a misdemeanor over one on trial for a felony, which was not the case at the common law. 1 Bishop's Criminal Law, sections 804–806.

These conclusions are not inconsistent with that reached in Johnson vs. State, 24 Fla., 162.

V. The remaining assignment of error relates to the denial of the motion in arrest of judgment. Under this assignment it is contended that since the Revised Statutes went into effect, which was on June 13th, 1892, the law as found in McClellan's Digest has been repealed. The homicide in question occurred July 12th, 1891, and the trial took place in July, 1892. Section 2353 of the Revision provides that no offense committed, and no penalty and forfeiture incurred prior to the taking effect of such Revision shall be affected thereby, and no prosecution had or commenced shall be abated thereby, except that when any punishment, forfeiture or penalty shall have been mitigated by the

provisions thereof, such provisions shall apply to and control any judgment or sentence to be pronounced, and all prosecutions shall be conducted according to the provisions of law in force at the time of such further prosecution and trial applicable to the case. This section answers the assignment and the contention urged in support of it. The case of Higginbotham vs. State, 19 Fla., 557, and the jail delivery results of the legislation of 1881 ascertained by it, led to the proposal of Section 32 of Article IV of the Constitution, which is; that "the repeal or amendment of any criminal statute shall not affect the prosecution or punishment of any crime committed before such repeal or amendment." This feature of the Constitution is noticed in *Ex parte* Pells, 28 Fla., 67. Whether it can have the effect to inhibit any mitigation of punishment is not necessary to be decided here as that imposed by the sentence is within the limits of both the old and the new law.

The judgment is affirmed.