ALBERT GRAY, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1.  A statement in a motion for a new trial is not self-supporting in view of a ruling of the court denying it.

2.  Chapter 4400, Laws of 1895, prohibits prosecuting officers from commenting before the court or jury upon the failure of an accused to testiy as a witness in his own behalf, and it is the duty of trial courts to see that such impropriety is not committed

3.  After the state closed its testimony, the accused examined several witnesses in his defence, though he did not testify in his own behalf; the prosecuting officer in his argument to the jury stated that the evidence as it stood before them unexplained and uncontradicted, although it did not point positively to the defendant was sufficient to warrant a verdict of guilty: *Held*, To be a permissible comment on the evidence as it existed, avoiding as it did, any reference to the failure of the defendant himself to explain or contradict what had been introduced.

4.  Near the body of a deceased found in a road a human track was seen leading away with certain peculiarities; a witness for the State testified that about one month before the killing he saw tracks made by the accused and they were the same as that found near the body: *Held*, not to be objectionable on the ground of remoteness.

5.  To show flight after a homicide it is competent to prove by witnesses living so near the accused and accustomed to see him so often when at home that a failure to see him there would tend to show absence, that he was not seen there after the killing.

6.  Testimony having a tendency to prove a material circumstance in the case is material though its bearing may be slight.

7. After the retirement of the jury under the charge of the court they returned into court and requested to know whether under the law they must find a verdict of murder in the first degree or acquit; or whether they could find the accused guilty of some lesser offence, and the court reread to them portions of the charge given bearing on the matter enquired about; thereupon defendant objected to a word in the charge on the ground that it was indefinite and the court added in writing and read to the jury the explanation of the word as insisted on by the defendent: *Held*, That the objection made was removed by the explanation given by the court.

8. A portion of a charge excepted to must be construed in connection with other portions given and also the facts in evidence.

9. It is proper to refuse a portion of a charge asserting that the jury should know to a moral certainty that they have all the facts and circumstances before them before they can convict; and if they feel after considering the evidence that some important matter of proof has been omitted, and their minds were not satisfied this was a reasonable doubt upon which they should acquit.

10. Testimony held sufficient to sustain the verdict.

Writ of error   to the Circuit Court   for Jackson County.

The facts in the case are stated in the opinion of the Court.

*Calhoun & Farley*, for Plaintiff in Error.

*The Attorney-General*, for Defendant in Error.

MABRY, J.:

The plaintiff in error was indicted  and tried for murder at the Fall term, 1898, of the Circuit Court for Jackson  county, and there was a mis-trial. At   the Spring term of the court, 1899, he was again tried, and convicted of manslaughter, and from the sentence of the court for this offence a writ of error has been sued out.

Two of the assignments of error argued refer to charges alleged to have been given on the first trial of the case, in that the court failed to charge upon any degree of homicide except murder in the first degree, and also in giving a charge on the subject of an *alibi*, set out in the motion for a new trial. This motion was denied and there is nothing before us to show what the court charged on the first trial. The statement in the motion for a new trial is not self supporting, in view of the ruling of the court denying it, and there is no basis of support for such assignments of error. This disposition of them does not concede the right of plaintiff in error to assign errors on charges of the court on a former hearing that resulted in a mis-trial, even if we had evidence of what the court then charged furnished by bill of exceptions properly made up or by proper record entries.

Another assignment is that the court erred in refusing defendant's motion "to strike out the first direct testimony of Melie Hamilton." There is nothing in the record to show that a motion was made to strike out any evidence of the witness Hamilton, or that any objection was made to his evidence.

Again it is assigned as error that the assistant State Attorney in his argument before the jury severely commented upon the fact that defendant made no statement in his defence by using the following language, *viz*: "Gentlemen of the jury, the evidence as it stands before you unexplained and uncontradicted, although it does not point positively to this defendant, is sufficient to warrant you in finding him guilty." This objection arises on the record for the first time after verdict in a motion for a new trial, and in its support an affidavit of defendant was filed that the State Attorney used the

language quoted. The bill of exceptions does not re-
cite that such language was used, but the supporting
affidavit is therein set out. The act of the legislature
(Chapter 4400, laws of 1895) authorizing an accused to
make himself a witness in his own behalf expressly di-
rects that no prosecuting officer shall be permitted be-
fore the court or jury to comment on the failure of the
accused to so testify, and no doubt can exist, under this
statute, as to the duty of the court to see that no such
impropriety is permitted. The prohibition of the stat-
ute is that no comment be made by the prosecuting of-
ficer before court, or jury on the failure of the accused
to testify in his own behalf, and the policy of the statute
should not be violated either directly or indirectly. The
statute does not, of course, prohibit legitimate comment
on testimony properly before the jury, and in our opin-
ion the language used, conceding that it is properly be-
fore us, can not strictly be regarded as a comment upon
the failure of the accused to testify in his own behalf.
After the State closed its testimony the accused intro-
duced several witnesses in his behalf, though he did not
take the stand himself. We think the prosecuting of-
ficer could comment on the evidence as it existed before
the jury, avoiding any reference to the failure of the
defendant himself to explain or contradict what had
been introduced. As to whether or not an affidavit is
the proper way to establish, or make known to this
court, that an improper comment was made by the
prosecuting officer, or whether objection and exception
should be made at the time such comment is indulged
in, is not decided, as it is not deemed necessary.

The testimony for the State established that the de-
ceased, Richard McElroy, was found on the 8th day of
September, 1898, in a public road with his head badly
12

contused, and in an unconscious condition, from which
he never recovered. In the road where the body was
found there were signs of a "scuffle," and a track was
discovered leading up to a gate near the house of the
accused, a short distance away. Witnesses stated that
there was something peculiar about the track, the shoe
having a piece on the toe in the nature of a half sole,
and the heel on the right foot was run over on one side
and trimmed off. A State witness, Arthur Barnes, who
saw the track leading to the gate, stated that he had
not seen the accused right before the deceased was
killed, did not know how long before; that he had not
seen him since August, and the State Attorney asked
the witness what he saw about the shoe of the accused.
This question was objected to on the ground that the
time was too remote, the objection was over-ruled and
exception taken. The witness detailed a conversation
between himself and the accused in reference to half-
soling the latter's shoe, and further stated that after-
wards he saw the track made by the accused and it was
the same peculiar track as that found in the road near
where the deceased was found. The objection to the
question was on the ground of remoteness, and we think
the court ruled correctly on the objection made. The
killing was on the 8th of September, and the witness
saw the accused make the track sometime in August
which, at most, was not much more than one month
from the time the track was discovered near the body
of the deceased. It was one way of comparing the track
found near the wounded man and that made by the ac-
cused, and if within one month, or even more, he wore
shoes that made the identical, or peculiarly similar
track, it was competent testimony for the consideration
of the jury.

The court denied motions made by defendant to exclude the evidence of two witnesses tending to show that the accused was not seen in the neighborhood where he lived and where the killing occurred after that event. The grounds of objection are that the testimony is immaterial, irrelevant and calculated to mislead the jury. The witnesses lived near the accused and were accustomed to see him often at his home before the killing, but never saw him there afterwards until he was arrested in a different part of the county though his family continued to live there. The witnesses showed that they lived so near the accused and were accustomed to see him so often when at home that a failure to see him would tend to show an absence, and in this case flight. The accused lived a short distance from where the deceased was struck his death blows, and though seen near and going towards that place but a short time before the killing, he was not seen thereafter in that immediate locality by his near neighbors whose testimony was sought to be excluded. This testimony tended to show flight on the part of the accused, and was competent.

The defence proved by W. J. Johnson that the accused was at witness' house before sun-up the morning the deceased was killed. Johnson's house was about two miles from where the killing took place, and the State witnesses tended to show that this occurred after sun rise, some placing it at three quarters of an hour by sun. Johnson stated that one Nichols appeared at his house about eight o'clock that morning while the accused was there. The witness denied on cross-examination that he had stated to John Messer and two others that the accused came a little before Nichols did, and when told that the latter was in Dellwood, about two miles away, at eight o'clock that morning, said "O, well,

he came sometime before Mr. Nichols came." Nichols
testified for the defence that he arrived at Johnson's
house about eight o'clock in the morning, about five
minutes after the accused did, and that he left Dellwood
about seven o'clock. In rebuttal the State introduced
John Messer and proved by him that Johnson made the
statement he denied making, and that Nichols was in
Dellwood about eight o'clock that morning. This wit-
ness stated that he did not remember what time he got
up that morning, but he went up to the gin and a Mr.
Stephens came up and went over to the school house;
the school opened about eight o'clock, and Nichols had
not hitched up his mules then; that a party came for
witness to go to the store and he went and sold some
medicine. He was then asked what he did after that,
and stated he went to breakfast and then to the store,
stopping a little while before going back to the gin, and
remained there about fiften minutes, during which time
Nichols was there. The defendant objected to the ques-
tion as to what the witness did after selling the medicine
at the store, and error is assigned in the court's ruling
permitting it. The testimony of this witness had a
tendency to show that Nichols was in Dellwood at least
as late as eight o'clock the morning of the killing, and
to establish this fact it had some bearing. In view of
Nichols' statement that the accused arrived just before
he did at Johnson's, and the testimony as to the contra-
dictory statements of the latter as to when the accused
did arrive, it was competent to show that Nichols ar-
rived at a sufficiently late hour to enable the accused to
walk the distance after the killing occurred. The testi-
mony was of little bearing either way, but was sufficient-
ly material to go to the jury.

Error is assigned upon the following portion of the

instruction given by the court to the jury, *viz*: "Under
the laws of this State unlawful homicide may be either
murder in the first, second or third degree, or man-
slaughter, and under an indictment of murder in the
first degree, as in this case, the defendant may be con-
victed of any one of the offences of which the evidence
establishes his guilt." The objection to the charge is
that the word "establishes" is not explained, and it is
insisted that the court should have informed the jury
that the accused could not have been convicted unless
the evidence established his guilt beyond a reasonable
doubt. At the request of defendant the court charged
fully on the necessity of the exclusion of every reason-
able doubt from the minds of the jury by the evidence
before they could convict. Aside from this, however,
the bill of exceptions shows that the jury returned into
court and requested to know whether under the law
they must either find guilty of murder in the first degree
or else not guilty at all, or whether they could find the
accused guilty of some less offence, and thereupon the
court read to the jury the first and second paragraphs of
his charge, the first being that the defendant was charg-
ed with committing the crime of murder in the first de-
gree by unlawfully striking and killing one Rich McEl-
roy, from a premeditated design to effect his death, and
the second is the portion quoted. When the jury was
again retiring defendant's counsel objected on the
grounds that the charge left the word "establishes" in-
definite, and that what was read did not embrace all the
charge and that it did not answer the request of the jury.
Thereupon the court recalled the jury and added the
words: "beyond any reasonable doubt" to the second
paragraph and offered to read the entire charge if de-
fendant and his counsel desired it done, and they stated

that they did not. The second paragraph of the charge imparted to the jury what they desired to know, and the addition of the words by the court removed all objection made to the charge in reference to misleading the jury on the subject of a reasonable doubt. Several assignments of error are based upon the failure of the court to read again to the jury on their return into court for further instructions the several portions of the charges given, but the record shows, that defendant declined to have this done, and nothing further need be said in reference to such assignments.

A further assignment of error is that the court erred in giving the following portion of the charge, *viz*: "if the accused unlawfully struck and killed McElroy under circumstances that the killing was not justifiable or excusable in law, nor murder in any degree, he was guilty of manslaughter." The court instructed the jury as to murder in the first, second and third degrees, and the portion here excepted to was the definition of manslaughter. For the defendant the court charged that "in order to convict, the jury must believe from the evidence beyond a reasonable doubt, not only that the defendant killed Richard McElroy, but that the killing was done in such a manner and under such circumstances as would make the homicide a crime. If the proof shows that the killing was done in self-defence, or under such circumstances as would make the killing excusable homicide or justifiable homicide, you must find the defendant not guilty." The portion of the charge excepted to must be construed in connection with the other portions given, and also the facts of the case. The indictment alleged, and the proof showed without contradiction, that the deceased was struck by some blunt instrument, and the statement "nor murder in any degree," con-

tained in the portion of the charge excepted to, has reference to this offence as already defined by the court. The definition of man-slaughter under the facts of this case was correct, and if defendant desired a further instruction as to what was justifiable or excusable homicide, he should have asked it. He did ask and obtained a charge that if the killing was done in self-defence, the jury should acquit, and we are satisfied that the facts did not demand of the court any further instructions as to justifiable or excusable homicide, especially in the absence of any request to so instruct.

A further exception on the charges is that the court refused to give the following portion, *viz*: "not every killing of a human being is a crime. The law recognizes certain killings as excusable and others as justifiable. In considering the guilt or innocence of the accused, all the facts and circumstances of the homicide should be most carefully weighed, and the jury should know to a moral certainty that they have all the facts and circumstances before them before they can convict; for if the jury feel after considering the evidence that some important matter of proof has been omitted, and their minds are not satisfied, this is a reasonable doubt, and you should find the defendant not guilty." The charge taken as a whole was properly refused. It was calculated to mislead the jury by inaccurate statements as to a reasonable doubt. It asserts that the jury should know to a moral certainty that they are in possession of all the facts and circumstances of the killing before they can convict; and further, that if the jury feel after considering the evidence that some important matter of proof has been omitted, and their minds are not satisfied, this was a reasonable doubt upon which they should acquit. It is incumbent upon the State to estab-

lish the guilt of the accused beyond a reasonable doubt, but suppose this has been done and it should appear from evidence introduced for the defence that some important matter within the knowledge and capacity of accused to produce has been omitted by him, could it be insisted that he should be acquitted because of such failure? The court clearly and sufficiently charged the jury on the subject of a reasonable doubt in other portions asked by the accused, and as the portion refused contained inaccurate statements of law, it was properly rejected.

This disposes of the exceptions presented, except that the verdict was not sustained by the evidence. We have carefully examined the testimony, and reach the conclusion that under recent decisions of this court, especially since the act of 1895, Chapter 4392, the verdict must be sustained. Brown v. State, 31 Fla. 207, 12 South. Rep. 640; McCoy v. State, 40 Fla. 494, 24 South. Rep. 485.

The judgment is affirmed.