FRANCIS A. JOHNSON, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. The minutes of the Circuit Court should show by formal entry to that effect the fact of the presentment of an indictment by the grand jury in open court. Where, however, the fact of such actual presentment is not controverted, and the motion in arrest of judgment is upon the ground of the absence of such entry, and there is in the transcript of the record evidence from which it may reasonably be presumed in the absence of a direct issue as to such presentment that such presentment was made, the motion should be denied.

2. Where upon such a motion it is a fact that the indictment was regularly presented, the record should be amended *nunc pro tunc* so as to speak the truth upon the subject.

3. Murder in the second degree as defined by our statute discussed, and the testimony in this case held not to show a case coming within the offence as defined

4. Whether or not a conviction of an offence of a minor grade has the effect to acquit the prisoner of the higher grade charged in the indictment and bar a conviction of the higher grade on a new trial, is a question upon which no opinion will be expressed until there shall

be a case of such a conviction of the higher grade on a new trial, presented.

5. The illicit relation between the defendant and the wife of the deceased, held admissible as evidencing the former's motive for killing the deceased.

Writ of Error to the Circuit Court for Polk county.

The facts of the case are stated in the opinion.

*C. C. Wilson, J. H. Humphreys* and *Wall & Turman* for Plaintiff in Error.

*The Attorney-General* for Defendant in Error.

We will consider the 5th assignment of error first, viz: that court erred in overruling motion in arrest of judgment, the ground of which motion was, in substance, that the return of the indictment into court was not shown by an entry in the minutes.

The record recites that on the 27th of January, 1887, came the State of Florida, by the grand jurors, and filed in said court the indictment, which is thereinafter set out. The indictment, in its caption and presentment, purports to be presented " in the Circuit Court of the Sixth Judicial Circuit of the State of Florida, for Polk county, at the special term thereof," &c., " by the grand jurors of the State of Florida, enquiring in and for the body of the county of Polk." It is signed by the acting State's Attorney, " prosecuting for said State," and bears the endorsements: " A true Bill," " John C. Blount, Foreman," and " Filed January 27th, 1887." " W. H. Johnson, Clerk." It also appears in the record that the case was docketed in the Circuit Court and set for trial on the same day on which the indictment was found, viz: January 27th, 1887. Defendant was arraigned upon the indictment and pleaded to it

not guilty. This is a sufficient showing that the indictment was duly presented by a grand jury. It is not necessary that the Clerk enter on the minutes the fact of the bringing in of the indictment by the grand jury in order to give it validity. Collins vs. State, 13 Fla., 651; Bass vs. State, 17 Fla., 685; Wall vs. State, 23 Ind., 150; Mose vs. State, 35 Ala., 421; State vs. Grate, 68 Mo., 22.

State vs. Mason, 32 La. Ann., seems to be to same effect, as cited in U. S. Dig., vol. 12, page 210.

That such entry at the time is not essential to give validity to the indictment is also evident from fact that the entry may be ordered made *nunc pro tunc*, if court chooses to do so, at a term subsequent to finding of indictment. State vs. Pearce, 14 Ind., 426; State vs. Clark, 13 Mo., 432; Green vs. State, 19 Ark., 189.

Returning to the first assignment of error it is that the court erred in admitting testimony of Griffin as to statements of Mrs. Newcastle at time of arrest of defendant. If there is any legal objection to this statement it is not perceived. The so-called " statements " are merely her part of a conversation, accompanied by certain demonstrations of affection, between her and Johnson at the time of his arrest. The evidence as to this interview were admissible both as a part of the *res gestœ* and as showing the relations between them. The argument of counsel for plaintiff in error is addressed merely to the inferences properly to be drawn from this evidence considered with other matters, and might be very well, and probably was, addressed to the jury, but its bearing upon the admissibility of the testimony is not perceived. Further, though the court overruled defendant's objection to " statements " of Mrs. Newcastle, to which ruling there was exception, no further remarks of Mrs. Newcastle were in fact given in evidence af-

ter the objection, and there was no motion to strike out or exclude any already testified to, so there is nothing before this court concerning the matter.

The second assignment is that the court erred in admitting the testimony of Dr. C. C. Newcastle as to a letter he had received from the deceased. As there is no exception noted to this ruling of the court it is unnecessary to discuss the assignment. Record, 34. It is however relevant, and if there were anything in ground of objection stated in argument of counsel for plaintiff in error that the letter itself was the best evidence, that specific ground of objection would have to be made in the court below, it cannot be raised here on a general objection, merely, made below. Gelpecke vs. Lovell, 18 Iowa, 17.

The third assignment is that the court erred in refusing to strike from the record the testimony of Hefford, Victoria L. Strong and John Osborne. There was no exception taken or reserved at the time the testimony was admitted, and it may well be doubted whether under such circumstances the subsequent refusal of the court on motion to strike out the testimony is subject to review in this court. Hilliard on New Trials, page 433, note b. The only ground of this motion was that the testimony was too remote. The deceased was killed in his own bed, in the house inhabited only by himself, his wife and the defendant below. The testimony as a whole showed that an intimacy had subsisted for several years prior to and continuing up to the homicide, between the defendant and Mrs. Newcastle. The testimony objected to, showing the existence of this intimacy at the place of their residence before they came to Polk county, their conduct going to show that it was a criminal and adulterous intimacy, and their association having continued down to the time of the murder, the testimony sought to be stricken out was en-

tirely competent to show the relations of all the parties in the house at the time of the murder, as well as the motive of the defendant to murder Newcastle. Hall vs. State, 40 Ala., 698; Johnson vs. State, 17 Ala., 618; Stout vs. People, 14 Parker, (N. Y. Cr.) 71; State vs. Watkins, 9 Conn., 47; Jeffords vs. People, 5 Parker, (N. Y. Cr.) 522; Dillin vs. People, 8 Mich., 357; State vs. Rash, 12 Ired., N. C. 382; Commonwealth vs. Ferrigan, 44 Pa. St., 386.

The fourth assignment is that the court erred in overruling the defendant's motion for a new trial, which motion is upon grounds that the verdict was contrary to evidence, to charge of the court, and that there was no evidence to support verdict of murder in the second degree.

The evidence would have been sufficient, it is true, to have supported a verdict of murder in the first degree. That defendant below, who had long maintained an improper intimacy with deceased's wife, shot and killed him in his bed, is apparent, and there is no attempt at excuse or justification other than the statement of accused that Mrs. Newcastle called to him that Newcastle was choking her, and that Newcastle said if defendant came there he would kill them both, whereupon he ran down and shot deceased. Viewed in the light of all the circumstances, how much of this statement they should believe, or disbelieve, was for the jury. Nor, in fact, does it appear that there was any necessity for the killing of Newcastle, even to prevent his injuring his wife, even if he was choking his wife, which is not shown. He was a small man and delicate and without a weapon, and there is nothing to show that he had done or was able to do any serious injury to defendant or Mrs. Newcastle, even if the jury believed defendant's statements; nor, if it had been otherwise, would such quarrel or assault, brought on by the conduct

of the defendant, and to which he made himself a party, and wherein he used a double-barrelled gun on an unarmed man of Newcastle's physique, have been any excuse or extenuation if he intended to kill Newcastle and so shot him. Mitchell vs. The State, 22 Ga., 212, 234.

I will endeavor to show later that the jury may have taken another view of the transaction, but granting, for the sake of the argument, for the present, that the evidence clearly showed murder in the first degree, the jury having found the defendant guilty of murder in the second degree, will a new trial be granted on that account?

Murder is but one offense under our statute, though divided for the sake of fixing the punishment into several grades; but apart from this consideration, a defendant indicted for felony may be convicted at common law of any felony which the indictment is sufficient to charge, and our statute has extended this to include misdemeanors. McC's Dig., p. 447, sec. 15; p. 451, sec. 36. So under the statutory divisions of criminal homicide, the defendant may be convicted of any which the language of the indictment is sufficient to charge or include, and it has been expressly decided by this court that indictment for murder in the first degree will sustain conviction in second degree. Potsdamer vs. State, 17 Fla., 896.

Murder in the second degree, in this State, is the killing of another perpetrated by an act iminently dangerous to others, (than the perpetrator,) and evincing a depraved mind, regardless of human life. McC's Dig., p. 350. Every murder in the first degree, and every indictment for murder in the first decree, necessarily includes all this, though there is added a premeditated design to effect the death of a human being; and if a murder in the first degree is proven, necessarily a killing by an act iminently

dangerous to another and evincing a depraved mind regardless of human life, is proven.    Even if the statute defining murder in the second degree be construed to require the act to be iminently dangerous to more than one person, yet the indictment for murder in the first degree is sufficient to include it, as decided in Potsdamer's case, and the defendant has no ground of complaint or for new trial because the jury found him guilty of a lesser offense than they might have done under the evidence.    Allen vs. State, 37 Ark., 433, 436 ;  State vs. Dowd, 19 Conn., 388 ; Com. vs. McPike, 5 Cush., 181.

If it is to be held that the mere mistake of a jury in any such case, in finding a defendant guilty of a lesser degree than they might have done, is to warrant a new trial, it is a very serious matter wherein justice may be defeated by something of which the defendant certainly has no reason to complain.    If we take it in connection with another doctrine, (against which counsel shall always ask leave respectfully to protest as having no foundation in reason, justice or law, but which is supported by numerous decisions of other courts, and has sometimes been intimated by members of this court, though fortunately never decided here,) that is to say, that a defendant tried for murder in the first degree and convicted of a lower degree, and who obtains a new trial for any reason, cannot thereafter be convicted of any higher degree than that found by the verdict on the former trial, which had been set aside, and that such annulled verdict operates as an acquittal of all such higher degrees, these two doctrines together would work this result, that if a jury found a defendant, charged with murder, guilty of a less degree than the evidence would have warranted them in finding, that they have finally acquitted him as to the higher degree, and the evidence not proving the lower degree, his conviction of that must be set aside,

with the ultimate result of discharging, unpunished, a murderer of the highest grade, because the jury did not find him as guilty, or bring in a verdict which would have been followed by as severe a punishment, as the evidence showed they might have done. There must be something wrong in any course of reasoning which will work out such results.

But further, in this case might not the jury from the evidence itself, apart from the legal considerations above stated, have found their verdict of murder in the second degree? The testimony clearly shows that the defendant discharged a loaded shot gun in or into a dark, or partially dark room, wherein were two persons, Newcastle and his wife, and thereby Newcastle was killed. If the jury were in doubt as to the motive or design with which this was done, is there any such want of support from evidence of verdict of murder in second degree as will cause an appellate court to reverse the court below in refusing a new trial and to set aside the verdict of a jury, even if the court would do this merely because it might differ in opinion with the jury as to the degree or division of criminal homicide under which the killing properly falls? Sherman vs. The State, 17 Fla., 888, 894.

THE CHIEF-JUSTICE delivered the opinion of the court:

The plaintiff in error was indicted for murder at a special term of the Circuit Court for Polk county, in January, 1887, John C. Newcastle being the victim. On arraignment at the succeeding May term there was a plea of not guilty, then a trial and conviction of murder in the second degree. A motion for a new trial was made, which the court denied; and then a motion in arrest of judgment, which was also denied.

Before proceeding to other questions, we will dispose of that involved in the motion for arrest of judgment, the denial of which is assigned for error. This motion is based on the ground that there is not sufficient record evidence in the case that an indictment was found by the grand jury and returned by them into court to authorize the trial—the defect being that the minutes of the court do not show that the grand jury returned any indictment into court against the plaintiff in error. That is true as to the minutes; but what does appear in the case is an indictment in the usual form by grand jurors of the county of Polk, charging against plaintiff in error the murder of Newcastle, and signed by "George B. Sparkman, acting State Attorney for the Sixth Judicial Circuit of the State of Florida, prosecuting for said State." On the indictment are these endorsements: "A true bill"—"John C Blount, Foreman." "Filed January 27th, 1887, W. H. Johnson, Clerk." While the proceedings of the court show no other entry than this of the return of the indictment into open court, the record before us (the Clerk speaking) recites that "on the 27th day of January, 1887, came * * the grand jurors and filed in (said) Circuit Court a bill of indictment against the defendant," &c., and then gives a copy of the same. But the record proper does show that Sparkman was duly appointed acting State Attorney for the special term at which the indictment was found; that Blount was the foreman of the grand jury for that term; that Johnson was the Clerk of the court, and that the court was in session January 27th, 1887; and shows further that on that day the case was docketed and set for trial.

The question presented is whether the facts as they thus appear constitute sufficient record evidence of the return of the indictment into court, or whether a formal entry in the minutes is necessary to show such return? There is noth-

ing in our statutes that requires this formal entry. Section 3, McClellan's Digest, p. 442, only directs that "all indictments shall be signed by the prosecuting attorney, and endorsed on the back by the foreman of the grand jury, when * found—'a true bill.'" That is done in this case. How the indictment gets into court and gets on the files is not provided for by any specific direction, but is left to the established practice of the courts for ages, which is by the appearance of the grand jurors before the court, their tender of the indictment to the court, and its reception by the clerk—the official of the court for that purpose—all of which is presumed to have been observed in this case, in the absence of any allegation or pretense to the contrary. The better practice would be that which is usually followed, to make a formal entry of the return of the indictment in the minutes; but all the authorities do not sustain the contention that this is absolutely necessary.

In Collins vs. The State, 13 Fla., 651, Judge Westcott reviewed the question at considerable length, citing authorities of great respectability to sustain the view that such record evidence is not essential, and though the precise question now before us as raised in the lower court has not been decided, the evident inclination manifested by our decisions is against the essentiality of such record evidence. Bass vs. The State, 17 Fla., 685, and citations.

The motion here does not controvert the actual presentment of the indictment in open court by the grand jury, but merely avers the omission of the proper entry of such presentment. If the issue of such presentment was squarely raised by the motion we do not know but that we should arrest the judgment, but as it is not, our conclusion in view of the evident tendency of our former decisions and the authorities cited in them is to affirm the action of the Circuit Judge in denying the motion as made.

Assuming, as we do, that the motion in arrest of judgment was denied for the reason that the indictment was formally presented in open court by the grand jury, our opinion is that the record should have been amended, *nunc pro tunc*, so as to show such fact.    State vs. Pearce, 14 Ind., 426; State vs. Clark, 13 Mo., 432; Green vs. State, 19 Ark., 189 ; Freeman on Judgments, secs. 71, 72.

We come now to the errors assigned as having been committed during the progress of the trial, the principal one of which is the action of the court in denying the motion for a new trial.    The motion was based on the usual general grounds with this addition : that " the evidence in the case did not warrant the jury in convicting the defendant of murder in the second degree."

We find nothing in the record to lead us to pronounce the court in error on the other grounds.    As to this, the evidence so far as material, is that the plaintiff in error lived with Newcastle and his wife, and that on the night of the 9th of January, 1887, Newcastle was found dead in his bed.    His death was caused by a gun-shot wound penetrating the skull under the right eye about an inch below the orbit, passing backwards to a point about two inches under the left ear.    There were powder stains around the opening of the wound, where the face was badly burnt.    How and by whom the wound was inflicted does not appear from any positive testimony of witnesses present.    The evidence on the subject is that of a physician who was called about eleven o'clock that night to see Mrs. Newcastle.    He says that the plaintiff in error came for him, and while at his house said he had shot Mr. Newcastle.    Either then or soon afterwards the full statement of plaintiff in error was "that Newcastle was choking Mrs. Newcastle, and threatened to kill them both when he heard him (plaintiff in error) com-

JANUARY TERM, 1888. 173

Francis A. Johnson v. The State of Florida—Opinion of Court.

ing down the stairs, which he did in answer to Mrs. New-castle's calls. She called to him to know if he was going to stay up stairs and let Newcastle kill her. Then he got up and come down stairs, and Newcastle said that if you come down here I will kill you both, and he (plaintiff in error) then picked the gun up and shot him."

This is all the evidence bearing on the question as to whether the jury were right in finding a verdict of murder in the second degree. Does it warrant that verdict? We think not.

The statute of this State in regard to homicides, makes seven degrees of the offence, three of murder and four of manslaughter. It is unnecessary to recite these in detail here, but it is not to be forgotten that every degree has its own distinguishing features, and that facts which bring a case within either must be met by a verdict of guilt in that special degree. The offence each degree marks out is a separate offence from that marked out by either of the other six, to be determined as the statute prescribes "according to the facts and circumstances of each case." In the present case the offence the jury found is defined in the statute thus: the killing of a human being, "when perpetrated by any act imminently dangerous to others, and evincing a depraved mind, regardless of human life, although without any premeditated design to effect the death of any particular individual, shall be murder in the second degree."

To understand what this means, let us consider it in connection with the other degrees of murder as defined in the statute. The killing of a human being, "when perpetrated from a premeditated design to effect the death of the person killed, or any human being, shall be murder in the first degree." "When perpetrated without any design to effect death, by a person engaged in the commission of any

felony, it shall be murder in the third degree." The first evidently requires that the killing should be in pursuance of a premeditated design to effect the death of some human being, though the person killed was not the one intended. Comparing this with the second, one chief difference is that the element of premeditation is essential in the former, but not in the latter, though if it exist in the latter it is not to be directed against any particular individual. Another difference is, that the design in the first need not be directed against the person actually killed, but nevertheless must be against some particular individual; while in the second it is not only not necessary that the design should be aimed at any particular individual, but if the design be to kill, it must come from a general deadly intent, and it must be executed by an act imminently dangerous to others, evincing a depraved mind, regardless of human life. But in the second it is not required in all cases, that there should be an intent to kill. For instance, if a man out of enmity to the owner of a vessel, and desiring to do him injury, should use dynamite, or other explosive to destroy the vessel while he knew passengers were aboard, and death should ensue, to one or more of them, that would be a case of murder in this degree. Every element of the degree, the imminently dangerous act, and the depraved mind, regardless of human life, would be present, although the intent was to destroy property, not life.

Without further analysis to distingush these two degrees, we refer to Darry vs. The People, 10 N. Y. R., 120, for a full and exhaustive discussion of the subject. In that State these degrees are subdivisions of the first, but the marks of distinction are the same; and the reasoning and decision of that case sustains our conclusion in this.

But it may be asked, if the second degree includes a

case in which there may be no design to kill, how does such a case differ from one in the third degree which is a killing without any design to effect death, by a person engaged in any felony? For the purposes of this case as it is presented here it is not important to answer this question, and we will content ourselves with the general remark that the character of the act and the state of mind of the offender necessary to the second is excluded from the third, leaving the distinction to rest upon a felony in the latter that is not aggravated by imminent danger to others and by depravity of mind, reckless of human life.

In deciding that the evidence in this case does not warrant a verdict of murder in the second degree, we refrain from prejudging a future trial, by any expression of opinion as to the degree of the offence of homicides that evidence does point to.

In the discussion of this point, the Attorney-General dissents from what is said in Potsdamer vs. State, 17 Fla., 396, 904, of the conviction of an offence of a minor grade having the effect of an acquittal of the higher grade charged in the indictment. When a case shall come before us in which subsequent to a verdict of guilt of the lower grade, a new trial has been granted and has been followed by a conviction of the higher grade of the offence, we will feel called upon to express an opinion. No such circumstances existed in Potsdamer's case.

As to other errors assigned, the first sets up objection to the admission of the testimony of the witness Griffin in regard to statement made by Mrs. Newcastle at the time of the arrest of the plaintiff in error. There is nothing of any consequence in those statements, except as showing the affectionate relations between the two, and her distress on account of his being taken away. What she said being

in his presence and hearing may be significant in connection with the question of motive for shooting Newcastle, and in that view was admissible. And the same may be said in regard to the third error assigned, which was the refusal of the court to strike out testimony of witnesses Hefford, Strong and Osborne, intended to show improper relations between the plaintiff in error and Mrs. Newcastle. That was legitimate testimony towards discovering the motive of the plaintiff in error for shooting Newcastle. There was some looseness in it, but the object was not amiss.

The remaining error assigned is in the admission of the testimony of a brother of Newcastle as to a letter or letters he had received from the deceased. The object was somewhat the same as in the admission of the other testimony, by showing complaint because of misconduct of the wife. But such testimony was clearly inadmissible. The letters themselves should have been produced, or their non-production accounted for, if proper evidence at all. We think, though, they could not have been admitted, because while the acts and conduct of the wife might be enquired into for the reason we have already given, this cannot be done by statements of the husband to a third party, whether by letter or otherwise, not communicated to her, or shown to have had any part or influence in the subsequent tragedy. This method of getting at the acts and conduct of parties to find a motive for the deed is too remote and unreliable. Weyrich vs. The People, 89 Ill., 90.

For the errors herein declared, the judgment is reversed and the case remanded for a new trial.