530                        SUPREME · COURT.

WILLIE GOLDING, PLAINTIFF IN ERROR, VS. THE STATE
          OF FLORIDA, DEFENDANT IN ERROR.

The defendant and G. became engaged in a personal difficulty in
    which G. was killed by the defendant, but the evidence failing
    to show that the killing was perpetrated by an act imminently
    dangerous to others, and evincing a depraved mind regardless
    of human life, although without any premeditated design to
    effect the death of any particular individual: *Held*, not to be
    murder in the second degree.

Writ of Error to the Circuit Court for Suwannee County.

The facts of the case are stated in the opinion.

*J. C. Gallaher*, for Plaintiff in Error.

*The Attorney-General*, for Defendant in Error.

MITCHELL, J.: The plaintiff in error was indicted for
murder in the first degree, but convicted of murder in the
second degree, and the case comes before this court upon
writ of error to the Circuit Court of Suwannee county from
the order of the trial judge overruling motion for new trial.

The only question in the case essential to be decided is,
did the evidence establish murder in the second degree?
Under the statute, McClellan's Digest, 350, murder in the
second degree is defined to be the killing of a human being
without the authority of law, when perpetrated by an act
imminently dangerous to others, and evincing a depraved
mind, regardless of human life, although without any pre-
meditated design to effect the death of any particular indi-
vidual.

It is only necessary to give enough of the evidence to
show its character and application to the subject under con-
sideration, that is, as to whether or not the evidence estab-
lished murder in the second degree. The evidence tends
to show that on the night of December 22, 1888, the
defendant and the deceased, Walter Gross, and others, were

at church, and that after the services at the church were. over, the defendant and other young men, or boys, (the evidence showing that both the defendants and deceased, were young men or boys) left the church together going in the direction of the defendant's home, and that after they left the church, the deceased and another young man left, and were traveling on the same road that the defendant had taken, and that in passing other parties on the road the deceased and his companion were running, saying that it was their intention to overtake the Clark girls, who were ahead of them, for the purpose of having some fun with them, and when about a quarter of a mile from the church the deceased and his companion overtook the defendant and the young man who was with him, and that immediately upon coming up with the defendant, the deceased asked the defendant if he said "he had knocked the blood out of him at old man Hurst's," to which the defendant replied, "yes, I said so." The deceased then said, "you are a G—d d— liar," and the defendant stepped back about two steps and said, "don't you call me a G—d d— liar," and the fight then began, and Willie cut Walter and Walter staggered and fell, and said, "Willie you have cut me to the heart, and G— d— you, I will kill you," and got up with a stick in his hand, and then fell on his face and died in about two minutes. There is some evidence that after being cut, the deceased struck at the defendant with his stick, but it is not very definite. One or more of the witnesses testified that the stick which Gross had at the time of the difficulty was the heart of a tram-road pole, about two feet long, and as thick as the arm of one of the witnesses. The evidence further tends to show that there was blood on the stick that Gross had at the time of the difficulty; that some one made a fire near the body of the deceased, and that some one

threw the stick on the fire, when some other person took it off the fire and remarked that it might be needed or called for, but the stick was again thrown on the fire and burned up. There was more evidence in the case, but it did not materially differ from the foregoing statement. This evidence does not establish murder in the second degree. There is nothing in the evidence tending to show that the defendant assaulted and killed Gross under such circumstances as to show an act by the defendant imminently dangerous to others, and evincing a depraved mind, regardless of human life, although without any premeditated design to effect the death of any particular individual. On the contrary, the evidence establishes the fact the killing occurred in a personal difficulty between the parties, and that the actions of the defendant were such as to evince an intention to slay the deceased, but we express no opinion as to the guilt of the defendant in any other degree of homicide in the killing of Gross ; all that we intend to say is, that under the evidence, murder in the second degree was not made out. Murder in the second degree under the statute is, for instance, when a man discharges a gun, throws a stone or brick into a crowd without any intention of killing any particular individual, and one of the persons in the crowd is killed thereby, the killing is murder in the second degree, because the discharge of the gun, throwing a stone or brick into the crowd evinces a depraved mind regardless of human life, although the party has no intention of killing any particular individual. That the evidence does not establish a case of murder in the second degree, see Johnson vs. State, 24 Fla., 162. For the reason given above the judgment will be reversed, and the cause remanded.

My individual opinion, however, is, that in cases where the evidence shows a man to be guilty of murder in the

first degree, and the verdict is guilty in the second degree, the verdict of the jury should not be disturbed, because all the elements that enter into and constitute murder in the first degree, except the premeditated design contained in the first · degree, enter into murder in the second degree. The two offences are of the same character—in the same line of cases—and I can see no good reason why, under a proper indictment, when a man is shown to be guilty of murder in the first degree, a verdict in the second degree should not stand, although the conviction of murder in the second degree might not technically conform to the statutory definition of murder in that degree.