DALLAS MARSHALL, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. Danger to many, or "others," is, under Section 2380, Revised Statutes, not an essential to murder in the second degree, as it was under Section 2, p. 350, McClellan's Digest; and now proof of an intent upon the part of the accused to kill a particular individual, or "another," does not exclude a conviction of murder in the second degree. *Johnson v. State*, 24 *Fla.*, 162, 4 *South. Rep.*, 535, *approved and distinguished.*

2. The fact that the evidence in a case may be sufficient to sustain a verdict of murder in the first degree will not of itself preclude a conviction of murder in the second degree, as this degree is defined by Section 2380, Revised Statutes.

3. Where it is sought to review the action of a trial court on the ground that the verdict is contrary to the evidence, all the evidence that was before that court must be presented to the appellate court or it will refuse to enter upon a consideration of the question.

4. Where a correct instruction is requested by the accused, it is error to refuse it as having been already more correctly given in accordance with the evidence, where the charge referred to as having given it more correctly makes essential to an acquittal conditions or propositions that are not contained in the rejected instruction.

5. Where a charge, if erroneous at all, is clearly favorable to the accused, he can not claim further consideration of it as a ground for reversal.

6. Where the State in making proof of its case puts in evidence the statements made to other persons by the accused of the circumstances of the killing, it is error for the judge to instruct the jury that "for obvious reasons said statements and admissions should be received with caution," where it can not be said that the jury's understanding of the instruction was that caution should be exercised in his favor in weighing the statement.

7. The rules as to the admission in evidence of the accused's declarations of the circumstances of the homicide when they are offered by the State in proof of its case, and as to the credibility to be attached to the same by the jury, discussed.

Writ of Error to the Circuit Court for Columbia county.

The facts of the case are stated in the opinion of the court.

*B. H. Palmer* for Plaintiff in Error.

*The Attorney-General* for Defendant in Error.

RANEY, C. J. :

The jury found the plaintiff in error guilty of murder in the second degree, and the sentence prescribed by the law (sec. 2380 Rev. Stat.), imprisonment in the State prison for life, was pronounced by the court; and it is contended here that the testimony does not sustain the verdict. The stated section of the Revised Statutes has, as will appear by comparing it with sec. 2, p. 350, McClellan's Digest, made a change in the law of murder as it stood at the time the revision became operative (June 13th, 1892). There are still three degrees of murder, but they are defined as follows: The unlawful killing of a human being when perpetrated from a premeditated design to effect the death of the person killed or any human being, or when committed in the perpetration of or in the attempt to perpetrate any arson, rape, robbery, or burglary, is murder in the first degree. Murder in the second degree is when the unlawful killing is perpetrated by any act imminently dangerous to another, and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death of any particular individual. Murder in the third degree is when the unlawful killing is perpetrated without any design to effect death, by a person engaged in the commission of any felony other than those specified above.

The change made in defining murder in the first degree consists in the addition of the words following the word "being," down to and inclusive of the word "burglary," but the only change in the old definition of murder in the second degree is the substitution of the word "another" for the word "others." Murder in the third degree under the old law, was where the unlawful killing "was perpetrated without any design to effect death, by a person engaged in the commission of any felony."

Counsel for the prisoner invokes the decision of this court made at the January Term, 1888, in Johnson vs. State, 24 Fla., 162, 4 South. Rep., 535, in support of the contention referred to above.

It is to be observed of that decision that its purport, as to the point relied on, is that if the effect of the testimony was to show in the accused an intent to kill any particular person, that such proof, as the statute then was, excluded the case from murder in the second degree. Putting the lives of many in jeopardy, or imminent danger to many, was an essential to the offense under the old statute; and though no deadly intent was necessary to the offense, and a general deadly intent, an intent to hurt many, did not exclude a case from it, yet a particular deadly intent, or intent to kill a particular individual did work an exclusion. This is clearly shown by the case of Darry vs. People, 10 N. Y., 120, decided in the year 1854—fourteen years before we adopted the same statute there construed. Of the correctness of the decision in Johnson's case none of us feel any doubt. The change of language indicated above to have been made by the revision in substituting "another" for "others" is, however, material, and its effect is to remove the former exclusion of cases where danger to only one person is shown, and

consequently if the testimony before us shows a premeditated design on the part of the accused to effect the death of the deceased, or is sufficient to sustain a conviction of murder in the first degree, such particular deadly intent will not prevent an affirmance of the judgment. The fact that the evidence may be more than sufficient to sustain the verdict, or would support a conviction of a higher degree of murder, will not render it insufficient to do so, nor can the prisoner complain of the error of the jury in finding a verdict for the lesser offense. Brown vs. State, 31 Fla., 207, 12 South. Rep., 640. Murder in the second degree is no longer an offense in which there must be danger to many.

II. Before proceeding to the consideration of any other question, there is a preliminary point to be considered, it being whether or not the bill of exceptions does not show upon its face that the entire material case presented to the jury is not before us. In the first place it states that one of the witnesses, William McNish, gave the dimensions of the wounds. These dimensions are not stated. Again it says that Marshall's gun was exhibited to the jury, but it has not been brought here; and then it says that Henry See explained to the jury the diagram made by him, still the explanation is not set forth. Assuming, but not deciding, that the absence of the gun which was put before the jury by the defendant *may* be immaterial in view of the fact that there is no conflict in the evidence as to the marks on it, and even making the same assumption as to the explanation of the diagram by See on the theory that his explanation was nothing more than the usual tracing of lines and pointing out the objects designated on the diagram—an assumption of a

most questionable character in view of the imperfectness of the diagram in the record—we must still say, in view of the absence of the dimensions of the wounds, that it is very doubtful that this case could be considered by us on the ground that the verdict is contrary to the evidence. Where it is sought to review the action of the trial court on the ground just stated, all the evidence which was before that court must be presented to the appellate court, or it will refuse to enter upon a consideration of the question. Lurton vs. Carson, 2 Blackf., 464; Hammon vs. Sexton, 69 Ind., 37; Morris vs. Stern, 80 Ind., 227; French vs. State, 81 Ind., 151; Shimer vs. Butler University, 87 Ind., 218; Keep vs. Kelly & Levin, 29 Ala., 322; Pullen vs. Lane, 4 Coldwell, 249; 2 Am. & Eng. Ency. of Law, 220. Counsel who bring cases here must not be surprised at our refusal to sit in review of any judicial action where it does not appear that all of that upon which the lower court acted is before us. In view of the fact that the case has to be reversed on the ground considered in the next subdivision of the opinion, the bill of exceptions showing enough for action on the points there discussed (Seymour vs. Creswell, 18 Fla., 30)—we do not now say any more on this subject than to observe that the greatest care should be taken by all concerned to see that bills of exception do contain all the evidence necessary to show the exact condition of the trial court as to any point upon which it has ruled.

III. On the trial the prisoner's counsel requested the judge to give the following instruction to the jury: "If you find from the evidence that the deceased in going by the prisoner's house left the most direct road to go by the prisoner's house, and called the prisoner telling him he had come to kill him or be killed, and

that the prisoner honestly intended to escape from the house to avoid danger, and that the prisoner saw the deceased present his gun at him, and that he had a reasonable ground to apprehend great bodily harm, then the defendant had a right to protect himself.'' The judge refused the charge because, as 'stated by the bill of exceptions, it had been already given more correctly from the evidence. We find the only instruction to which the judge could have referred to be as follows: If you believe from the evidence that the defendant, without being in fault himself, with the knowledge that the deceased had made threats against his life, or had made threats of personal violence against him, was in his own house, and that the deceased, armed with a deadly weapon, a little after dark on the night of the homicide rode up to or near defendant's house, and cursed him for a G— d— s— of a b—, or a cowardly s— of a b—, and that defendant told him to go away, that he did not want to have a difficulty with him; and should find further that deceased refused to do so, and continued to curse defendant, and that he had then and there told him he had come to kill him, or that he would then and there kill the defendant or that defendant should kill him; and should further find from the evidence that defendant had reasonable ground to apprehend a design on the part of the deceased to murder him or to commit a felony, or then and there to do the defendant some great personal injury, and there was reasonable ground to believe that there was imminent danger of such design being then and there accomplished, and that the defendant to protect himself from death or some great personal injury immediately shot and killed the deceased in self-defense, then you should find the defendant not guilty on the ground of justifiable homicide.

Our judgment is that it was error to refuse the charge. Previous threats by the deceased, and knowledge of the same by the prisoner, were not essential to the prisoner's right to protect himself by taking the life of the deceased. They are not made so by the instruction asked, but are by that given, and for this reason, if for no other, the former should have been given.

There are also exceptions to two instructions. given in the general charge. One is on the theory that heat of passion is not justified in the eyes of the law by mere words, and that the instruction to the effect that heat of passion thus generated may make a killing manslaughter, was erroneous. Certainly no injury could have resulted to the accused from the charge; and we will not consider it further. Sullivan vs. Mc-Millan, 26 Fla., 543, 589, 8 South. Rep., 450, 460. The other instruction, that the prisoner shot "from the inside of the house." As the case has to go back, it may be sufficient to say that if on a new trial the testimony on this point should be the same as it is in the record before us, it will be safer to omit the expression, as has been done in some of the instructions.

IV. The instructions given to the jury as to the statements of the accused which the State put in evidence require, in view of a new trial, some notice, though they were not excepted to.

In Rex vs. Jones, 2 Car. & P., 628, it was held by Bosanquet, sitting at the assizes in the year 1827, that "if a prosecutor uses the declaration of a prisoner he must take the whole of it together, and can not select one part and leave another; and if there be either no evidence in the case, or no other evidence incompatible with it the declaration so adduced in evidence must be taken as true. But if after the whole of the

statement of the prisoner is given in evidence, the prosecutor is in a situation to contradict any part of it, he is at liberty to do so; and then the statement of the prisoner, and the whole of the evidence, must be left to the jury for their consideration precisely as in any other case, where one part of the evidence is contradictory to another." This doctrine has not received the sanction of the courts and is not sound. In Corbet vs. State, 31 Ala., 329, the court admits, as is well settled, that when a confession is given in evidence against a defendant, it is his right to have the whole of it laid before the jury and considered by them; yet it denies that it follows that if there be either no other evidence in the case, or no other evidence incompatible with it, the declaration so adduced in evidence must be taken as true, and aptly says: The declaration or confession may be incompatible with itself, or may be so unreasonable as to tax credulity too far. We hold that the defendant has all his rights, in this connection, when the entire conversation is laid before the jury and they are instructed to give it a fair and unprejudiced consideration. Of course that body will not, and should not without reason, believe that portion which makes against the prisoner, and reject all that favors his innocence. Again, in Eiland vs. State, 52 Ala., 322, where the above is approvingly quoted, the same court observes: "The law does not ascertain the credence which shall be attached to either part or to the confession or declaration in its entirety. The jury are not bound to attach equal credence to every part; they may for sufficient reasons, reject a part and give effect to a part; such rejection can not be capriciously made, nor can credence be capriciously given to a part. That which is favorable to a party should not be rejected merely

because it is favorable to him, and because of the motives which may have induced him to make it. The confession should be taken as a whole; the time and circumstances of its making—its harmony or inconsistency with other evidence and the motives which may have operated on the party in making it—should all be fairly considered by the jury. Then, without regard to whether they are clearly disapproved or not, the jury should credit all that they find sufficient reason for crediting, and reject all they find sufficient reason for rejecting."

Statements, confessions and admissions when given in evidence, says the Supreme Court of Missouri, must all be taken together, and the jury will attach such credit to them as they deem them worthy of. They may believe everything the party says in his favor, or they may reject the same. It all depends upon the circumstances surrounding the case, and the degree of probability there is in the truth of the statements, when viewed in the light of the whole transaction which they purport to narrate. Mr. Greenleaf, in his work on Evidence, sec. 218, observes that if what the prisoner has said in his own favor is not contradicted by evidence offered by the prosecutor, nor improbable in itself, it will naturally be believed by the jury, but they are not bound to give weight to it on that account, but are at liberty to judge of it like other evidence by all the circumstances of the case. State vs. Hollenscheit, 61 Mo., 302. See also Blackburn vs. State 23 Ohio St., 146; 1 Greenleaf on Evidence (15th ed.), Section 201.

We think the rule to be well stated by the Alabama court, and do not understand the other authorities cited to convey a different meaning.

Dallas Marshall v. The State of Florida.—Opinion of Court.

The instructions alluded to as having been given by the trial judge are as follows: "If you believe from the evidence that the accused made voluntary admissions, or that he made a statement or statements to persons in regard to the homicide before arrest, then such admissions and statements may be considered by you in making up your verdict. For obvious reasons said statements and admissions should be received with caution. It is your duty to consider all that is proven he said before and immediately after the homicide, and thereafter until arrested, and you may believe the whole of his admissions or statements, or none, or no part of the same, or you may believe a part, and dis believe a part, as you in your judgment may deem to be just and right." Such instructions should not have been given. They trespassed upon the function of the jury as shown by the authorities above. The necessity for the exercise of caution in receiving evidence of verbal confessions is founded on the theory of protecting the accused (1 Greenleaf on Evidence, 214), but it can not be said that the jury's understanding of the first paragraph of the charge quoted was that caution should be exercised in his favor in weighing the statement referred to. Andrews vs. State, 21 Fla., 599, 609-10. The jury should have been permitted to consider the statement without this comment from the court, and as the case has to go back, it is proper that we should so state, though no exception was taken to the charge.

The judgment is reversed and a new trial awarded.