CHARLES McCOY AND HENRY THOMAS, PLAINTIFFS IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1.    If a party desires to avail himself of the omission of the trial

court to charge the jury on any point of law in the case, he must ask the court to give the instruction desired, and except to its refusal; otherwise he will not be permitted to assign the omission as error.

2. Assignments of error based upon instructions given by the court to the jury, not excepted to in the court below, will not be considered by an appellate court.

3. Where the record shows that the court's written charge was delivered to the jury and filed upon the day of the trial of a case, the fact that the charge purports to bear a previous date is immaterial.

4. Where the record shows that the jury was empanelled partly from the regular venire and partly from the names of persons drawn upon a special venire previously ordered in the case, and no objections to empanelling any juror appear to have been made by defendants, a judgment of conviction upon the verdict of such jury will not be reversed because the record fails to show that the special venire actually issued as ordered, or that was served and returned by the sheriff.

5. It is sufficient if it appears by necessary and reasonable implication from record entries that the defendants and the jury were present at all necessary "stages of the trial."

6. In order to hold one guilty of murder in the first degree who is not the actual perpetrator of the crime, he must not only be present when the crime is committed, but he must be aiding, abetting, advising, encouraging or assisting another to commit it, having himself a premeditated design to effect the death of the person killed, or knowing or believing that such other person intends to kill the deceased.

7. An erroneous instruction applicable only and confined to the offense of murder in the first degree, is not available to reverse a conviction for murder in the third degree, where all the instructions as to offenses less than murder in the first degree included in the charge are correct, and the erroneous instruction could not have contributed to produce the conviction of such lesser degree.

8. Where, construing the charge as a whole, a verdict is not opposed to, but in accordance therewith, the court should not grant a new trial upon the ground that the verdict is contrary to the charge of the court, although isolated paragraphs may not authorize the verdict rendered.

9. An indictment properly drawn for murder in the first degree charges manslaughter, as well as murder in all its degrees,

and in a trial thereupon is involved a question of defendant's guilt as to every grade of unlawful homicide.

10. Under Chapter 4392, Acts of 1895, providing "that in all criminal prosecutions hereafter begun in this State, if the defendant be found guilty of an offense lesser in degree, but included within the offense charged in the indictment or information, such verdict shall not be set aside by the court upon the ground that such verdict is contrary to the evidence, if the evidence produced in such case would have supported a finding, or if such count would have sustained a verdict of guilty of the greater offense," a conviction for murder in the third degree will be sustained where upon the most favorable view of the evidence it shows that the defendants are guilty of murder in the second degree. The statute is merely declaratory, and the conviction under such circumstances would be sustained even in the absence of such a statute.

Writ of Error to the Circuit Court for Lafayette County.

The facts in the case are stated in the opinion of the Court.

*George W. Breare* for Plaintiffs in Error.

*The Attorney General* for Defendant in Error.

CARTER, J.:

At a term of the Circuit Court of Lafayette county, held in March, 1898, plaintiffs in error were convicted of murder in the third degree, and from the sentence imposed sued out this writ of error. The indictment alleged that defendants in Lafayette county, Florida, on October 16, 1897, with force and arms a deadly weapon, to-wit: a rifle charged with gun powder and leaden bullets, which rifle Charles McCoy then and there held in his hands, in and upon one Tuck George, unlawfully and from a premeditated design to effect his death, did

make an assault; that McCoy did then and there unlawfully and from a premeditated design to effect the death of George, shoot off and discharge the rifle aforesaid at, towards, against and upon the body of said George; that McCoy did then and there unlawfully and from a premeditated design to effect the death of said George, strike, penetrate and wound him in and upon the body with one of the bullets so discharged out of the rifle, thereby giving and inflicting, unlawfully and from a premeditated design to effect the death of said George, in and upon his body one mortal wound of width and depth unknown, of and from which wound George languished until the 17th day of October, 1897, on which day he, from said wound died; and that Henry Thomas was then and there present unlawfully and from a premeditated design to effect the death of George, aiding, abetting, counselling, comforting, encouraging, commanding and procuring McCoy the murder in manner and form aforesaid to do and commit.

I. One of the errors assigned relates to the failure of the court to instruct the jury upon the law of justifiable and excusable homicide. The defendants did not ask the court to give any instructions upon this subject. It is the settled practice in this State that if a party desires to avail himself of the omission of the court to charge the jury on any point of law in the case, he must ask the court to give the instruction desired, and except to its refusal; otherwise he will not be permitted to assign the omission as error. Blount v. State, 30 Fla. 287, 11 South. Rep. 547; Lovett v. State, 30 Fla. 142, 11 South. Rep. 552.

II. Several paragraphs of the charge are assigned as error. No exception to any part of the charge was reserved in the court below, and under our practice none can be taken primarily in an appellate court. Williams

v. State, 32 Fla. 251, 13 South. Rep. 429; McSwain v. Howell, 29 Fla. 248, 10 South. Rep. 588; Richardson v. State, 28 Fla. 349, 9 South. Rep. 704; Garner v. State, 28 Fla. 113, text 153, 9 South. Rep. 835; Phillips v. State, 28 Fla. 77, 9 South. Rep. 826.

III. It is assigned as error that "the written charge of the court to the jury is dated February 4, 1898, being one month before the beginning of the trial." It appears from the record that on March 4, 1898, the court delivered its written charge to the jury. This charge bears date February 4, 1898, although it does not appear to have been filed until after it was delivered. The error in its date is obviously clerical, and counsel have not suggested any reason why this clerical error should cause a reversal, nor do we perceive that it could have affected the defendants' case, or operated in the highest degree to their prejudice. It is therefore, immaterial.

IV. On March 2, 1898, the court ordered a special venire for thirty jurors, whose names were drawn from the jury box, returnable March 4, 1898. The names of the persons so drawn appear of record. On March 4, 1898, the jury which tried defendants was empanelled, consisting of four from the regular and eight from the special venire previously drawn. No objections to the empanelling of any juror appear to have been made by the defendants. They, however, assign as error in this court the failure of the record to show that the special venire actually issued, or that it was served and returned by the sheriff. A sufficient number of those drawn for the special venire appeared in court on the return day of the writ ordered to be issued to complete the panel which tried the defendants, and they were accepted without question by them. Whether these jurors voluntarily appeared, or came in obedience to a writ duly issued and served, but not entered of

record, cannot under these circumstances affect the validity of the defendant's conviction.

V.    It is insisted that the record fails to show that the defendants were personally present when the judge, aided by the clerk and sheriff, drew from the jury box the thirty names for the special venire.   Without committing ourselves to the proposition that the drawing of names from a special venire is a "stage in the cause" requiring the defendants' personal presence, we hold that the entries of record show by necessary intendment that defendants were present when these names were drawn.   The record entries show that on March 2, 1898, the grand jury in open court presented the indictment; that the defendants being present were arraigned, and plead not guilty, and thereupon the court made an order for the special venire, the language of the order being set out in the record.   Then follows this language: "Whereupon, pursuant to the foregoing order, the judge aided by the clerk and sheriff, proceeded to draw from the jury box the names of thirty persons to serve as talesman jurors in said cause, namely." All of these proceedings were had on the same day without a recess or adjournment of the court, and appear to have been continuous, with an express declaration that defendants were present at the beginning of the proceedings.   Under decisions of this court it is sufficient that it appears from the record by necessary and reasonable implication that defendants were present at particular is fully satisfied by the record entries in this case. Brown v. State, 29 Fla. 543, 10 South. Rep. 736; Lovett v. State. 29 Fla. 356, 11 South. Rep. 172; Burney v. State, 32 Fla. 253, 13 South. Rep. 406.

VI.    Another assignment of error is that the record does not show that the jury was present during the trial.   The record entries show that on March 4, 1898, the jury was duly selected, empanelled and sworn, and

placed in charge of W. H. Chauncey a sworn deputy sheriff; that thereupon certain named witnesses were sworn on behalf of the State; that "pending the taking testimony the court took recess to 1:30 o'clock P. M.;" that at 1:30 o'clock P. M. the court opened pursuant to recess, and the taking of testimony was resumed; that the State rested, and certain named witnesses were sworn on behalf of defendants, "and after hearing the evidence, argument of counsel and receiving the charge of the court, retired in charge of W. H. Chauncey, a sworn deputy sheriff, to consider their verdict." The contention here is that these record entries do not show that the jury was present at the afternoon session of March 4, 1898. The charge being a capital one, the jurors were not permitted to separate, but were placed in charge of a sworn officer of the court, and while the word "jury" does not occur in the entry "and after hearing the evidence," etc., above quoted, yet its language clearly and unmistakably refers to the jury. If the jury heard the evidence and argument of counsel, received the charge of the court and "retired" to consider their verdict, they must have been present at the afternoon session of March 4, 1898. We think it appears from these entries by necessary and reasonable implication that the jury was present at all necessary stages during the trial, and that this assignment of error is not well taken.

VII. At the request of the State Attorney the court instructed the jury as follows: "If you believe from the evidence beyond a reasonable doubt that either of the defendants slew the deceased unlawfully and from a premeditated design to effect his death, with such a weapon as is described in the indictment, and at the time and place alleged in the indictment, it makes no difference in law which of them fired the fatal shot, if the other was present, unlawfully and from a premeditated design to effect the death of the deceased, Tuck George, you should

find them both guilty of murder in the first degree, as it makes no difference which fired the fatal blow if they were both there with a common intent, to-wit: with a common premeditated design." The instruction was excepted to, and is assigned as error. It is not argued that this instruction asserted an incorrect legal proposition, but it is insisted that it was calculated to confuse and mislead the jury, and that it was not justified by the evidence. It is insisted that the indictment charged that the offense was committed with a rifle, and that the evidence shows that Thomas was not armed with a rifle. It is true that several witnesses state that Thomas was armed wit a pistol, but John High, one of defendants' witnesses, stated that he was armed with a gun, though he did not know whether it was a shot gun or riflle. As there was evidence that Thomas was shooting at deceased; that deceased was struck by one bullet only—supposed to be a rifle ball—and that Thomas was armed with a gun at the time, we think the instruction was applicable to the evidence. But there is a serious defect in this instruction in that it holds one guilty of murder in the first degree who, having a premeditated design to effect the death of a particular person is present when such person is murdered by a third person. This is not the law. In order to hold one guilty under such circumstances, he must not only be present, but he must be aiding, abetting, advising, encouraging or assisting such third person to commit the crime, having himself a premeditated design to effect the death of the person killed, or knowing or believing that such third person intended to kill the deceased. Savage and James v. State, 18 Fla. 909. The court in its general charge gave a correct instruction upon this subject as applied to murder in the first degree, and it emphasized the necessity of aid and counsel on the part of the principal in the second degree by instructing the

jury that "the bare fact that Henry Thomas was present at the time of the alleged killing of the deceased took place, would not be sufficient evidence to warrant his conviction or to justify you in finding him guilty. You must be satisfied beyond a reasonable doubt that he was present when the fatal shot was fired, and then and there aiding, counseling, abetting or encouraging Charles McCoy to kill the deceased; and if from the evidence you are not thus satisfied under these instructions, then you should acquit the defendant Henry Thomas, although you are satisfied from the evidence beyond a reasonable doubt that Charles McCoy is guilty of murder in the first, second or third degree, or of manslaughter." Had the defendants been convicted of murder in the first degree, we would be required to determine whether the erroneous instruction given on behalf of the State would, when considered in connection with the entire charge of the court, require a reversal of the judgment, but as this instruction was confined entirely to murder in the first degree, and the instructions relating to the lesser degrees of homicide were correct and have not been assailed in this court. and the defendants were convicted of murder in the third degree, as to which the erroneous instruction had no relevancy, we do not think the defendants have been injured by this error, or that they are in a situation to complain of it. It could not have contributed to their conviction of mur-murder in the third degree.

VIII. The tenth paragraph of the charge to the jury instructed them "if, after a careful consideration of all the evidence, you entertain in your minds a reasonable doubt of the guilt of the defendants of murder in the first or second degree and of manslaughter, then you should acquit the defendants by a general verdict of not guilty." It is claimed that a verdict for murder in the third degree is contrary to this instruction and that the

court below erred in not granting a new trial on that
ground.    It is true that this instruction does not men-
tion murder in the third degree, and also true that the
charge nowhere defines that degree of murder, but the
court did not instruct the jury expressly that they could
not find a verdict for murder in that degree.    On the
contrary, they were expressly told that "a person on
trial charged with murder in the first degree, if the evi-
dence justifies it, may be convicted of murder in the first
degree or he may be acquitted of murder in the first de-
gree, and if the evidence justifies it such person may be
found guilty of murder in the second or third degree or
of manslaughter; or, in the absence of evidence to con-
vict of either of said offenses, such person may be ac-
quitted of all crime whatever by a general verdict of not
guilty, and where such trial is had (that is for murder)
as in the case at bar, if the jury find the accused guilty,
then in their verdict they should state the degree," etc.
There is also a reference to murder in the third degree
in another portion of the charge already quoted.    Con-
struing the charge as a whole, we do not think it pre-
cluded the jury from finding a verdict for murder in the
third degree as contended by defendants, and the Circuit
Court properly overruled that ground of the motion for
a new trial which was based upon such contention.

   IX.    The other assignments of error relate to the
sufficiency of the evidence to support the verdict.    The
principal contention of defendants under these assign-
ments is, not that they are entirely guiltless of any of-
fense, but that they are not guilty of murder in the third
degree.    In this State unlawful homicide is defined by
statute as follows:    "The unlawful killing of a human
being, when perpetrated from a premeditated design to
effect the death of the person killed or any human being,
or when committed in the perpetration of or in the at-
tempt to perpetrate any arson, rape, robbery or burglary

shall be murder in the first degree, and shall be punishable with death. When perpetrated by any act imminently dangerous to another, and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death of any particular individual, it shall be murder in the second degree and shall be punished by imprisonment in the State prison for life. When perpetrated without any design to effect death by a person engaged in the commission of any felony, other than arson, rape, robbery or burglary, it shall be murder in the third degree, and shall be punished by imprisonment in the State prison not exceeding twenty years. The killing of a human being by the act, procurement or culpable negligence of another, in cases where such killing shall not be justifiable or excusable homicide, nor murder according to the provisions of this article, shall be deemed manslaughter and shall be punished," etc. Sections 2380-2384 Revised Statutes. Under these provisions unlawful homicide may be either murder or manslaughter, both felonies, and the felony of murder is subdivided into three degrees, not into three distinct offenses, and murder may be committed either with or without a premeditated design to effect death, but the presence or absence of such a design is material in determining the degree of murder to which the offense is to be assigned for punishment. Davis v. State, 35 Fla. 614, 17 South. Rep. 565. An indictment properly drawn for murder in the first degree, under our previous rulings, charges manslaughter as well as murder in all of its degrees, and in a trial thereupon is involved a question of defendants guilt as to every grade of unlawful homicide. Potsdamer v. State, 17 Fla. 895; Reynolds v. State, 34 Fla. 175, 16 South. Rep. 78. Section 2383 Revised Statutes requires that "when the jury find the defendant guilty under an indictment for murder, they shall ascertain by their ver-

dict the degree of unlawful homicide of which he is guilty; but if the defendant on arraignment confesses his guilt, the court shall proceed to determine the degree upon an examination of the testimony and pass sentence accordingly." The jury is required to determine whether defendant has committed an unlawful homicide, and, if so, to declare by their verdict what degree thereof. They should truly find that degree, and that only, which under the law is applicable to the proven facts, and if they err in this, and injury results to the defendant, he is entitled to a new trial, or to a reversal of the judgment on appeal. It often happens, however, that juries through sympathy, inadvertence, misapprehension, failure to properly discriminate, or by reason of a desire to mitigate punishment, or from various other causes, do not truly ascertain by their verdict the degree of unlawful homicide of which the defendant under the law is guilty, and in all such cases the question arises whether the defendant is entitled to a new trial because of such error. Whenever the jury assign his offense to that class or degree carrying a heavier punishment or greater moral turpitude than the one to which under the facts it should have been assigned, the answer is plain. The injury to defendant being apparent, the verdict ought not to stand. When, however, the verdict assigns the defendant's offense to that degree or class, where the moral turpitude is no greater, and the punishment is less than it would have been had the verdict specified the proper degree or class of the offense, he is not injured but is benefited by such error, and there is no reason why he should derive a further benefit from an error in his favor. In this case there was no excuse or justification for the killing of George by the defendants; there was no sudden provocation sufficient to arouse their passions, and the only debatable question was whether they acted from that premeditated design

essential to constitute murder in the first degree. That the killing was perpetrated by an act eminently dangerous, not only to deceased but to others, and evinced depraved minds regardless of human life, is clearly shown by the evidence, and therefore, the offense proven against them was at least murder in the second degree. There is no room to contend that it would have legitimately supported nothing higher than manslaughter.  By their verdict the jury have said defendants were guilty of murder, and so they are, but it must be confessed that there is no evidence that at the time of its commission they were "engaged in the commission of any felony other than arson, rape, robbery or burglary," by which their offense might, in the absence of a design to effect death, have been properly assigned to the third degree of that offense for punishment. On the contrary, it ought to have been assigned to the second degree at least, which would have involved equal if not greater moral turpitude and a more severe punishment.  The jury correctly found that defendants were guilty of murder, but erroneously gave them the benefit of facts not in evidence by reducing it to punishment in the third degree of that crime, an error not only without injury to defendants, but of actual benefit to them, of which they should not be permitted to complain.  State v. Lindsey, 19 Nev. 47.

We are referred to the cases of Johnson v. State, 24 Fla. 162, 4 South. Rep. 535, and Golding v. State, 26 Fla. 530, 8 South. Rep. 311, in support of the defendants' position that each degree of homicide has its own distinguishing features, and the offense each degree marks out is a separate offense from that marked out by either of the others, and that facts which bring a case within either must be met by a verdict of guilt in that special degree.  Those cases arose under the statutes in force prior to the adoption of the Revised Statutes

defining murder in the second degree, and the purport of those decisions was that putting the lives of many in jeopardy, or imminent danger to many, was essential to the offense of murder in the second degree, and that an unlawful homicide perpetrated from a particular deadly intent, or an intent to kill a particular individual, was excluded from the second degree of murder. The rule announced in those cases was never applied to convictions of àny degree of unlawful homicide, other than murder in the second degree under the statutes then in force, and in Marshall v. State, 32 Fla. 462, 14 South. Rep. 92, it was held that by the substitution of the word "another" for "others," in the definition of murder in the second degree, which occurred in adopting the Revised Statutes, the rule announced in the Johnson and Golding cases no longer applied, and that consequently evidence sufficient to sustain a conviction of murder in the first degree would not, because it showed a particular deadly intent, prevent the affirmance of a conviction for murder in the second degree founded thereon. In that case and also in Brown v. State, 31 Fla. 207, 12 South, Rep. 640, it is said that the fact that evidence may be more than sufficient to support a conviction, or would support a conviction for a higher degree of the same offense would not render it insufficient to support the conviction for a lesser crime or lesser degree of the same crime embraced within the general charge; that the prisoner in such case was in no wise hurt by that excess of the probative force of the evidence which the jury ignored, and was not entitled to complain of the error of the jury in finding a verdict for the lesser offense. In the Brown case a conviction for manslaughter in the second degree then defined as follows: "The killing of a human being without design to effect death, in a heat of passion, but in a cruel or unusual manner, unless it be committed under such circumstances as to constitute

excusable or justifiable homicide, shall be deemed man-
slaughter in the second degree," and "every person who
shall unnecessarily kill another either while resisting an
attempt by that other to commit any felony, or to do any
other unlawful act, or, after such attempt shall have
failed, shall be deemed guilty of manslaughter in the sec-
ond degree," was sustained upon evidence showing that
if the homicide was not committed in self-defense it was
beyond any reasonable doubt murder in the first degree,
the court remarking that the fact that the jury did not
find the defendant guilty of as high a degree of the of-
fense as the evidence for the prosecution justified did not
even tend to show that they did not believe that evi-
dence, but rather that they had given to some feature of
it a mitigating effect which to the judicial mind it did
not seem to merit. In this case the defendants have had
a fair trial under an indictment charging them with ev-
ery grade of unlawful homicide; they have been properly
found guilty of murder and their offense ought accord-
ing to the evidence to have been assigned at least to the
second degree of that crime for punishment, instead of
which the jury, giving defendants the benefit of facts
not in evidence, has assigned it to a lower degree where
the moral turpitude is no greater, and the punishment
is less, and we think the conviction ought to stand.

What we have said is without reference to the act
of 1895, Chapter 4392, entitled "An act in relation to
crimes and criminal procedure," which prescribes "that
in all criminal prosecutions hereafter begun in this State,
if the defendant be found guilty of an offense lesser in de-
gree, but included within the offense charged in the in-
dictment or information, such verdict shall not be set
aside by the court upon the ground that such verdict is
contrary to the evidence, if the evidence produced in such
case would have supported a finding, or if such court
would have sustained a verdict, of guilty of the greater

offense." In the State of Missouri a similar statute has been enacted and verdicts are there sustained in accordance with its terms. State v. Keeland, 90 Mo. 337, 2 S. W. Rep. 442; State v. Frazier, 137 Mo. 317, 38 S. W. Rep. 913. We think our statute is merely declaratory, and that the conviction in this case could be properly sustained in the absence of such a statute. Under its terms, however, the conviction in this case must stand.

The judgment of the Circuit Court is affirmed.